## BALDWIN *v.* MARQUEZE & VARNEY.

1. By the correspondence between the parties a contract was entered into which contemplated a continuance of business for the season of 1890, of the same kind which had been previously carried on, to wit, the procurement of orders for merchandise upon the usual credit and not for cash only, the new feature being that plaintiff was to be compensated for his services by a specified commission on the amount of such orders instead of by a salary.
2. It was a breach of the contract for the defendants to withdraw the power to take orders for credit sales and restrict the plaintiff to the procurement of orders for cash sales only. As this breach would result naturally or most probably in a material reduction of the plaintiff's compensation, he was justified in discontinuing his services and in declining to execute the contract on his part.
3. By the breach above referred to the plaintiff had a cause of action for all the damages which he sustained thereby. His damages were not speculative nor too remote, and the evidence warranted the verdict as to amount. The court erred in granting a new trial.

March 27, 1893. Argued at the last term.

Before Judge HUTCHINS. Clarke superior court. April adjourned term, 1892.

Baldwin sued Marqueze & Varney, alleging: Defendants are indebted to him $2,000. In April, 1890, they entered into a contract with him to employ him as a traveling salesman for the fall season of 1890, to travel and sell goods for them in South Carolina and part of Georgia, and to pay him a commission of five per cent. on all sales made by him during said season, the terms upon which the goods were to be sold being the usual terms upon which boots and shoes are sold by wholesale dealers, to wit four months' credit from date of invoice; and petitioner was to have the privilege of dating bills as late as the ———— day of October, 1890, if the trade so required of him. His sales for said season would have amounted to about $40,000, five per cent. of which would have been about $2,000, the amount of loss to him caused by breach of contract by defendants, etc. There was a verdict for plaintiff for

$800. Defendants moved for a new trial, which was granted upon the ground that plaintiff was not entitled to recover under the law and the evidence. To this decision the plaintiff excepted.

The evidence upon the trial was the testimony of the plaintiff and certain correspondence. The plaintiff testified: Had been an employee of defendants as traveling salesman about ten years, starting on a salary of about $100 and expenses per month, and getting $150 and expenses per month for the last few years. The terms on which I sold goods for them were, to ship the goods about August 1st, have the bills dated October 1st, and due four months after date; which are the terms usually allowed by wholesale boot and shoe dealers, though I have known of one or two houses selling differently. During the season of 1888, over the same territory with the same line of goods, I took orders for defendants amounting to $42,431.90, and during that of 1889, orders amounting to $39,672.35. My sales during May, 1890, for the fall season of 1890, were $12,817. I do not know what proportion of these orders were accepted by defendants. I sent in the orders and they accepted such as they chose, never notifying me what they accepted and what rejected. After receiving the letters from defendants dated March 26th, 1890, which reached me June 1st, I made only one effort to sell goods for them according to the new terms prescribed therein, and was successful. I had notified my customers, fixing dates when I would call on them. I made no further effort to sell goods on those terms. I made efforts to procure other employment, both similar to the work I had been doing and other kinds of work, but did not succeed and was idle until December 1st, 1890. My previous employment with defendants was from June 1st for each year, and my accounts with them were kept by the year, ending June 1st in each

year. The party to whom I made the one sale always paid cash and was one of the wealthiest I ever sold to. The fall of 1890 was the best crop year we had had. My traveling expenses were usually $5.25 per day, and I usually traveled about seventy days for fall season. I could not have sold under these new terms from defendants. I am familiar with the customers and their financial condition. Under the old terms I would have been able to sell about $30,000, in addition to what I had sold in May. Could have sold as many goods after that fall as for any previous year. I had been going out about the first of June. This time I started earlier than usual. I usually wound up about August first. No other house would have given me a line of samples at the time I ceased to work for defendants.

The correspondence was as follows:

Plaintiff to defendants, March 29, 1890: Your letter of 27th received to-day, and I was not at all surprised at the contents, as of late I have not received a letter from you I thought pleasant at all. Now, I want to give you a fair trial and see if I can get some pleasant news occasionally from you. I will travel on commission, say you give me five per cent., as I can get that from any house, say June 1st commencing. Now if this don't suit you, I can do no more.

Defendants to plaintiff, April 18, 1890: We are getting our new line of samples ready, and think it will be the best we ever had. Please write when you want to start. We intend to have a little different system of orders this next season, and shall endeavor to make some reforms in our business, not only in delivering goods more promptly, but in using more discretion about filling orders for parties who cannot pay past indebtedness, and about taking orders which are sold under the prices marked on the tags. If you take the samples for the coming season to sell for us as proposed in your

letter, it must be with the distinct understanding that you conform to our rules, and that we accept no order that is not satisfactory both in credit and the prices at which the goods are sold. Shall send a new kind of order blank when we send samples, such as are used now in the larger houses, and explanation how to fill them out.

Plaintiff to defendants, April 22, 1890: I wish my samples by May 10th, and want goods down as low as I can get them. I do not want to make leaders only on brogs. and the 95c; all the rest I can get very good prices for. These goods everybody makes leaders of in S. C. Anyway I am willing to try it on commission this next season, as I believe I can make more than I am making; if I do not, I will leave the road or change my territory, as I believe I have enough to live on. Now I want goods marked down low, or as low as the next man.

Defendants to plaintiff, April 25, 1890: Yours of 22d at hand, by which we understand that you received our letter of 18th, and are willing to travel next season on commission and upon the conditions stated in our letter. We shall have our tags marked at prices the very lowest they can be afforded; and if we cannot get some orders at the marked prices, the business will not be worth doing. If we hear nothing to the contrary. after you get this letter, we shall assume that all is well understood between us, and will forward samples early next week.

Defendants to plaintiff, May 5, 1890: Hayward has written explaining new system of order blanks; and if there is anything about it or the tags and samples you do not understand, please let us know. We have given our orders to the manufacturers early, with instructions to deliver goods the middle of June, so we ought to be prepared to do a good deal of packing by last of the

month or July 1st, and after that hope to make prompt
shipments on all goods sold according to the tag that do
not have to be made up specially. Hope you will do as
little dating ahead as possible, and that we may have a
better showing on our So. Carolina business this season
than we have had for a good while.

Plaintiff to defendants, May 18, 1890 : I do not ex-
actly understand the book. Can't I use my old book
up? This book is entirely too much trouble. You will
see I got marked prices on all goods but some few
staple goods, but really I find them higher price than
Frank Adler, Balto., as I have seen their samples and
they have some of the cheapest goods I ever saw. Hope
you are pleased with my prices.

Defendants to plaintiff, May 26, 1890 : We have de-
cided to make a change in our terms this season, and to
sell goods only on a cash basis. Our new terms will be
*cash only,* and the longest dating to be October 1st,
thirty days. As it is too late to change tags the price
will remain as made, but will allow discounts as follows :
bills paid October 1st to 10th, eight per cent. discount,
November 1st to 10th six per cent. discount. Shall
accept no orders to be paid later than November 10th.
Have the terms well understood with the customer
when you take the order and distinctly marked on the
sheet which you send us. As we have written before,
shoes have decidedly advanced, and we cannot accept
orders when prices are cut. Please do your best to make
this new plan a success.

Defendants to plaintiff, May 28, 1890 : Now Baldwin,
we have had such bad luck the past few years in your
State and in some others, that we have had to change
our plans, and we determine for one thing, if no other,
that we will quit this long credit and lapping bill system,
and if there is any trade that want to buy for cash we
make it an inducement to do so, and if they do not

want to buy that way then we can't sell them. And so we wrote you the other day our new terms, and that is the only way we want to do business for this season at least. The prices we have given you this season and the inducement for the money to men who can pay certainly ought to meet all competition on such a line of samples as you have.

Plaintiff to defendants, June 1, 1890: Your letter of May 28th to hand, and I am very much surprised at its contents, as I have started on my trip, been out nearly a month and have written all my cards to the merchants asking them to hold their orders for me, not dreaming of such a thing as cash. I cannot travel this way on commission. You will have to finish out the year with me on salary, and I will do my best for you. This is all I can do. There is only one cash house that travels a man in So. Ca., and he travels three other States besides, and if I understand right that house is very weak now. This is not the season to start a cash business anyway. If you want to do a cash business, you should have started in a spring season; however I guess you think you know best. I will talk with Charles Baldwin about it and see what he thinks about it.

Defendants to plaintiff, June 4, 1890: Yours of 1st to hand, saying spring is the best time to start a cash business. We can only say, as we have written so many times before, that we cannot go on any longer with this long credit and lapping bill system, and having decided on the new terms, cannot change back again. Certainly the inducement we offer ought to take with good merchants, and the time the bills would mature comes when money begins to circulate. We have a good deal of money due us now from your State on the old system; and as everything is done so close now and at such large expense, we see no other way to do than to make this change. We do not care to make another engagement

with you on salary, and if you are not willing to go this season on commission as proposed and follow our instructions, please let us know right away so we shall know what to depend upon. Our salesmen in other States that we have heard from so far, seem to like our new system of terms.

Plaintiff to defendants, June 4, 1890: Drew on you to-day for $100. Please make out a plain statement of my account and send me to Ridge Spring, S. C. Also, I have been on the road since May 10th, twenty days at $5.25 per day. The statement you made out I do not understand. So make out one that I will understand. I am waiting here (Athens, Ga.) for instructions from you.

Plaintiff to defendants, June 7, 1890: Yours of the 4th received. I will not consent to the proposed violation of our contract. Will proceed under original contract if allowed to do so. Otherwise will hold you for damages.

LUMPKIN & BURNETT, for plaintiff.

BARROW & THOMAS, for defendants.

BLECKLEY, Chief Justice.

1. The correspondence between the parties, reading it all together, concluded a contract for the continuance of business by Baldwin as drummer or traveling salesman for the firm, for the season of 1890; and the business contemplated was of the same kind as that previously carried on, which was the procurement of orders for merchandise upon the usual credit, not for cash only. One new feature, and but one, was introduced: the compensation of Baldwin was to be a specified commission on the orders he procured, and not a fixed salary as it had previously been.

2. It was necessarily implied in the contract that Baldwin should have and retain power to take the class

of orders which the contract contemplated, until the season of 1890 closed. When this power was withdrawn, and he was restricted to soliciting and receiving cash orders only, the contract was broken. Because of this breach, he was justified in withdrawing from the business, and declining to execute the contract on his part. Such cutting down of his power would be almost sure to result in a very material reduction of orders, and thereby curtail his compensation. This would be a natural, certainly a most probable consequence, for it is matter of common information that in mercantile business cash orders plus credit orders would amount generally to very much more than cash orders alone.

3. It would be a reproach to the law if one seriously injured by a breach of contract could not recover therefor all the damages which he actually sustains. Under our code no such defect in the law of damages exists, whatever may be the infirmities of other legal systems. The damages recovered in this case were neither speculative, nor too remote; nor were they excessive in amount. No error was committed for which a new trial ought to be granted, and the court erred in granting the motion. The verdict must stand.

*Judgment reversed.*