### 2155.   STEWART & COMPANY *v.* STEPHENS.

Under the law applicable to the evidence, there was an unwarranted breach of the contract by the defendants, and no accord and satisfaction by the plaintiff.   The verdict was right, and no material error appears.

Complaint; from city court of Savannah—Judge Freeman. August 25, 1909.

Argued December 8, 1909.—Decided February 22, 1910.

Stephens sued Stewart & Co. for a balance of salary alleged to be due under contract, and recovered a verdict for $276.45 and interest.   The defendants' motion for a new trial was overruled, and they excepted.   The following is a condensed statement of the evidence: Stewart & Co. were cotton merchants at Savannah, Georgia, and were also interested in a cotton compress located at Vidalia, Georgia.   They employed Stephens to buy cotton for them in the country.   The contract of employment is evidenced by the following correspondence:   On May 1, 1905, Stewart & Co. wrote to Stephens as follows: "We will give you $500 for the season to go to some point we may designate later, the season to begin when cotton starts to move in August or the first of September, and end, say, not later than the first of March.   We will try to put you either in Adrian or Wrightsville.   Please advise at once if you will accept this offer."   On May 3, 1905, Stephens wrote to Stewart & Co. the following letter: "Replying to yours of May 1st, beg to say that I will accept your offer of $500 for the season, to begin when the cotton begins to move in August, or the first of September, and to end not later than March first, 1906.   Trust you can arrange for me to work at Wrightsville or Adrian.   My preference of the

two is Adrian, as it will be a better location for me when the season is over. Besides, I intend buying me a house if I can go there." Some correspondence then took place between the parties relative to the contract, Stephens urging Stewart & Co. to designate the place where he was to work under his contract; and on August 14, 1905, Stewart & Co. wrote to Stephens as follows: "We have decided to locate you at Adrian for the coming season; so please be at that place by the 19th, as we intend sending limits that day." When the contract was made, Stephens was living with his family at Wrightsville, but when he received this letter he moved his family to Adrian, and there started working for Stewart & Co. Stewart & Co. wanted the cotton, purchased for them by Stephens, shipped to them at Savannah, via their compress at Vidalia, but shortly after Stephens entered upon his engagement the railroad rates were changed so that cotton could not profitably be shipped that way, and thereupon Stewart & Co. wrote to Stephens (September 6, 1905) as follows: "We are thinking of moving you to Vidalia. Please be ready to go at a moment's notice. We may put you in charge of the compress." On September 7, 1905, in reply to this letter, Stephens wrote as follows: "I would have to secure a dwelling before I could move my family to Vidalia, but suppose if it is necessary I could go at any time. If you decide for me to go there, compress work is new to me, but I suppose I could manage it after being shown through the work." On September 8, in reply to this letter, Stewart & Co. wrote as follows: "We will let you hear from us in regard to the compress matter in a few days. If it is necessary for you to go down there, we think we can arrange it for you to get a house." Some other correspondence not material to be copied was carried on between the parties when Stephens, at the request of Stewart & Co., went to Vidalia. After working there for a short time he found that his health would not permit him to work in the compress, and he so informed Stewart & Co. They notified him by letter that if he thought the work would hurt him, they would not ask him to remain there for one day. After the receipt of this letter Stephens wrote to Stewart & Co., on September 23, that he would leave Vidalia and go back to Adrian; and on September 28, Stewart & Co. wrote to him as follows: "Since we are unable to buy any cotton at Adrian, owing to the freight complications there, and since your health and family will not permit that

we move you to any other place, we have thought it best that we should request you to send in your resignation." Stephens, in reply to this letter requesting his resignation, on September 29, wrote to Stewart & Co. a letter in which he set forth that the change in the freight rates and the complications arising therefrom were due to no fault of his, and refused to tender his resignation as requested, but offered to work at any other point, if Stewart & Co. would pay his moving expenses to and from the points, adding that he knew of no opening at present that he could secure if he surrendered his contract, and asking Stewart & Co. to withdraw their request for his resignation. On September 30, Stewart & Co. wrote Stephens two letters, one authorizing him to draw $12.69 to cover his expense account to Vidalia and back to Adrian, and also to draw his salary of $100 from August 19 to September 19, and in the other letter complained that he was wrong in leaving Vidalia without obtaining permission from them, as they always made their contracts with the privilege of removing their men from one point to another as they saw fit, adding: "We intend to keep you in Adrian to see if you can buy some cotton there. In future you will work under K. M. England at Wadley, Georgia, to whom you will report." Stephens reported to England, in accordance with his instructions from Stewart & Co., who ordered him to go to Swainsboro, Georgia, to buy cotton. He went there and stayed at a hotel, leaving his family living at Adrian. After working at Swainsboro about a couple of weeks, he sent to Stewart & Co. his expense account, including his hotel bill. Stewart & Co. refused to pay it, unless approved by England. England refused to approve the account including the hotel bill. Stephens thereupon returned to Adrian and so notified Stewart & Co., and further notified them that he held himself in readiness to perform his duties under his contract. In reply Stewart & Co. ordered Stephens to report back to England at his own expense, and await England's orders. This Stephens declined to do, and thereupon Stewart & Co. wrote to Stephens that he either had to "obey instructions or get out." In reply Stephens wrote to Stewart & Co. as follows: "I will inclose copy of my expense account, the result of going to Swainsboro, for you, and ask that you send me check for the amount of salary and expenses you feel like you are due me." In response to this letter Stewart & Co. wrote to Stephens: "We have checked

over your expense account and find that we are due you $2.42, for which amount you can draw. You can also draw for $43.55 due you on salary up to the day you left Swainsboro. These drafts will be promptly protected when presented. We herewith consider our contract with you cancelled." On receipt of this letter Stephens drew his draft for the amount authorized in the letter, and collected the money, and on November 30 wrote to Stewart & Co. as follows: "Yours of the 27th to hand, authorizing me to draw for $45.97, which amount I have drawn for. I will not consider the contract between us cancelled, until I have been advised legally that you would be authorized to take such action as you have taken." The evidence shows that Stewart & Co. had previously from time to time paid without question Stephens' account for expenses, including his hotel bill at Vidalia. Another letter which Stephens wrote to Stewart & Co. is pertinent: "I made a contract with you to buy cotton, but not to do everything else you wished me to do, and to go to a point designated by you, but.not points, and I believe I have complied with my contract in every particular, and I am yet willing to do so, and all I ask of you is to do the same. If I have not done so, show me the part I have violated, and I will readily acknowledge my error and step down and out. So far as leaving Vidalia and Swainsboro, think the circumstances fully justified my action in each case." After having drawn the draft for his expenses, and salary in accordance with instructions in the letter from Stewart & Co. dated November 27, 1905, Stephens wrote to them that he did not consider their contract cancelled, and that, as he had previously notified them, he would expect full payment of the amount due under the contract, and until the expiration of his contract he would remain at Adrian, subject to the duties required under his contract. And on March 5, 1906, he wrote to Stewart & Co. a letter demanding the balance of the salary due on his contract, and asked that a check be sent to him by return mail. They refused to comply with this demand.

*Edward S. Elliott*, for plaintiffs in error.

*Lawton & Cunningham, H. W. Johnson*, contra.

HILL, C. J. (After stating the foregoing facts.)

While many questions are made in the voluminous motion for a new trial, and argued by counsel for the plaintiffs in error, yet we think there are only two which need to be considered and decided:

First, did Stephens break his contract? Second, did the facts show an accord and satisfaction? If either result is shown by the facts, Stephens could not recover, and the verdict in his favor should be set aside. We do not think that under the evidence it can be fairly or reasonably contended that Stephens breached his contract. By the terms of the contract he was to be located for the season at Adrian, for the purpose of buying cotton; and in order to enable him to perform his contract he went to the expense of moving his family from Wrightsville to Adrian and renting a house in Adrian. He was not required, by the terms of his contract, to go to any other place; and if he did go at the request of Stewart & Co., he had a right to require them to pay the necessary expenses incident to such change of location. And this seems to have been at first the view which Stewart & Co. entertained of the contract, for when Stephens went to Vidalia to work in the compress and found that the work was injurious to his health, they willingly consented to his returning to Adrian, and paid his expense account and hotel bill while in Adrian. When he was called upon by Stewart & Co., through their agent, England, to go to Swainsboro, he had the right to expect that Stewart & Co. would pay his expenses to Swainsboro and his board at Swainsboro; and when this reasonable expectation, based not only on the terms of his contract, but on the previous conduct of Stewart & Co., was not realized, he was entirely justifiable in returning to Adrian and in notifying Stewart & Co. that he had done so and was ready to continue in the performance of his contract at Adrian. When Stewart & Co. refused to pay Stephens' expenses to Swainsboro, and notified him that they had no further use for his services, this amounted to a breach by them of their contract with him. This breach is shown not only by their refusal to pay the expenses which he had a right to expect they would pay, but by the explicit declaration, contained in their letter to him, that "we have no further use for your services." Stephens did not acquiesce in this breach of the contract, but insisted that he had complied with his contract in every particular and was still willing to do so, and requested Stewart & Co. to point out to him in what particular he had violated the contract, and contended that, as to the complaint of his leaving Vidalia and Swainsboro, he was entirely justifiable, under the facts, in so doing. As to the act of Stephens in leaving Vidalia, this was expressly ap-

proved by Stewart & Co.    While they may not have approved his act in leaving Swainsboro, we think, as above intimated, he was entirely justifiable in leaving, in view of the fact that they had refused to pay his expenses at that place, which he had a right to expect them to do, not only as a reasonable requirement by him under the contract, but also in view of the fact that they had paid similar expenses at Vidalia.    We therefore conclude that Stewart & Co. broke their contract with Stephens, and that, under the facts and the law applicable thereto, they were not justifiable in such breach. *Baldwin* v. *Marqueze,* 91 *Ga.* 404 (18 S. E. 309) ; 26 Cyc. 989.

Do the facts show an accord and satisfaction?    This depends primarily upon the construction of the letter which Stewart & Co. wrote to Stephens on November 27, 1905, as follows: "We have checked over your expense account and find that we are due you $2.42, for which amount you can draw.    You can also draw for $43.55 *due* you on salary up to the day you left Swainsboro. These drafts will be promptly protected when presented.    We herewith consider our contract with you cancelled."    This letter should be construed in connection with the letter which Stephens had written to Stewart & Co. and to which the above-quoted letter was a reply.    He wrote requesting them to send the amount which they considered they were *due* him for expenses and salary.    The item of expenses was eliminated by the amendment to the petition, leaving only the question of salary.    There was no dispute between the parties as to the amount of salary that was due him under the contract up to the day he left Swainsboro.    Stewart & Co. authorized him to draw on them for the amount of his salary which they admitted to be *due at the time he left Swainsboro.*    The permission to draw this salary which had been earned and which was due was not coupled with any condition that he would, on account of the payment of this salary, release them from the contract.    They owed him this amount of salary whether he had released them from the contract or not.    There was no dispute about the amount of salary, and nothing in controversy about which there could arise any settlement by way of accord and satisfaction.    There was nothing in the letter and nothing in the circumstances to put Stephens on any notice that the payment by Stewart & Co. of the amount of salary which was due him was conditioned upon his releasing them from their contract.    The payment of this salary was not a con-

sideration for the cancellation of the contract, nor was payment made upon such a condition.    Stewart & Co. had previously notified Stephens that they had no further use for his services.    To permit them to set up that the mere payment by them of the amount which they admitted to be due him up to the time when they discharged him, and when there was no difference or dispute between the parties as to the amount due, was an accord and satisfaction, would be to allow them to take advantage of their own wrong.    In other words, to discharge a faithful employee, and, when he accepted payment for what was due him up to the time of discharge, to plead such acceptance as an accord and satisfaction, would be a very unjust perversion of the underlying principle of accord and satisfaction.    *Finlay* v. *Ludden*, 105 *Ga.* 267 (31 S. E. 180). The words contained in the letter which authorized Stephens to draw for the salary due him up to the time of his discharge,— "We herewith consider our contract with you cancelled,"—could not reasonably be construed as meaning cancellation because of the payment of the money due him, or because Stewart & Co. had conceded anything to him in the payment; nor was there anything in these words to put him on notice that he could only accept payment of the money on condition that he agreed with the statement that the contract was in fact cancelled, but they were simply a notice to him that Stewart & Co. considered the contract cancelled by the payment of his salary up to the time he was discharged.    The facts clearly distinguished this case from those decisions which hold that retaining a check which accompanies a statement that the check is payment in full, or payment in part, of an account which is disputed, on condition that it is in settlement of the whole claim, amounts to an accord and satisfaction.    *Bass Dry Goods Co.* v. *Roberts Coal Co.,* 4 *Ga. App.* 520 (61 S. E. 1134) ; *Garbutt Lumber Co.* v. *Wilcox,* 6 *Ga. App.* 52 (64 S. E. 291).    We think it perfectly clear that the payment of this money as salary due to Stephens by Stewart & Co. up to the time of his wrongful discharge was not coupled with any condition that he should accept it as payment in full.    From a careful consideration of the evidence and the law applicable thereto, we are clearly of the opinion that Stephens did not break his contract, and that in accepting what was admittedly due him he did not accept it as an accord and satisfaction; and we also think that the contract was broken by the defendants with-

out justification, and that the jury was fully authorized in finding a verdict for the balance of the salary due Stephens under the terms of his contract. *Judgment affirmed.*

Russell and Powell, JJ., concur dubitante upon the holding as to whether there was an accord and satisfaction.