## Posey v. R. G. Hill & Company.

(Decided February 25, 1927.)

### Appeal from Boyd Circuit Court.

1. **Master and Servant—Resignation Because of Employer's Requirement of Something Immoral or Dishonorable is Not Voluntary.**—Requiring employee to do something immoral or dishonorable in connection with his duties, or restricting his rights under the contract of employment, is, in effect, a breach of the contract, and resignation of employee because thereof is not deemed a voluntary abandonment of the service.

2. **Master and Servant—Superintendent Held Not Justified in Resigning Because of Temporary Financial Embarrassment of Employer.**—General superintendent of construction company held not justified in leaving the service, so as to be entitled to unearned compensation because of temporary financial embarrassment of company resulting in its failure to honor his drafts for labor and supplies.

3. **Master and Servant—Mere Request to Sign False Financial Statement Held Not to Justify Superintendent's Resignation.**—Mere request, not insisted upon, that general superintendent of construction company sign alleged false financial statement, held not to justify his quitting the employment, so as to authorize recovery of unearned compensation.

4. **Master and Servant—Taking Away Superintendence of Project Held Not to Justify Resignation so as to Authorize Recovery of

Unearned Compensation.—Resignation of general superintendent of construction company held not justified so as to entitle him to unearned compensation because company took away from him superintendence of construction project, in the profits of which he was to share in addition to his salary, in return for his services, in view of his time being engaged by other projects, and his failure to object.

5. Appeal and Error—Instruction Not to Allow Superintendent Unearned Compensation if he Voluntarily Resigned Held Not Prejudicial Because Omitting "Probable Cause."—In action by superintendent who resigned for unearned compensation, instruction to find for employer if superintendent voluntarily quit employment held not prejudicial because omitting words "without reasonable cause," where superintendent was not justified in resigning.

DYSARD & MILLER for appellant.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

On January 10, 1923, M. E. S. Posey, a civil engineer, entered into a contract with R. G. Hill & Company, a Tennessee corporation engaged in highway, railroad and other construction work, to become its general superintendent. For his services he was to receive $300.00 a month and 10% of the net profits of two contracts, one with the Chesapeake and Ohio Railway Company for the construction of railroad yards at Newport News, Virginia, and the other with the Kentucky State Highway Department for the construction of Boyd county state project No. 6, with the guaranty that his portion of the profits added to the $300.00 per month would make a total compensation of not less than $5,000.00 a year. The contract was to begin on February 1, 1923, and continue for twelve months "or until the contracts now had are completed." Afterwards, it is claimed by Posey that the above contract was modified by a parol agreement whereby, instead of giving all of his time to R. G. Hill & Company, Posey was to devote a part of his time to the Ashland Limestone Company in which both he and R. F. Hill, Jr., of R. G. Hill & Company, were interested, and that one-half of the $300.00 mentioned in the written contract was to be paid by R. G. Hill & Company and the other half by the Ashland Limestone Company.

Alleging that he rendered the services required by said contract and its parol modification during the months of February, March, April, May, June and July, 1923, and "that on August 1st, 1923, the defendant breached its said contract in that it failed to honor plaintiff's drafts drawn upon it for the payment of payrolls and freight charges in connection with its work in Boyd county, Kentucky, mentioned in said contract; and in that it failed to pay its bills for materials and supplies used therein and thereby rendered plaintiff's connection with the defendant corporation so embarrassing that in preservation of his business reputation it was necessary for him to sever his connection with the defendant corporation," Posey brought this action to recover $700.00 for services rendered, and future compensation in the sum of $1,250.00 for a period of three months during which he made every reasonable effort to obtain suitable employment and was unable to do so. Thereafter Posey filed an amended petition wherein he pleaded, in substance, that in May, 1923, defendant took away from plaintiff without his consent the superintendence of the work at the Newport News yards, and thereby deprived him of his portion of the profits of that contract; that in July, 1923, the defendant took from him without his consent the superintendence of the work on Boyd county project No. 6, and at the same time notified him that it would not pay him any portion of the profits on either job; that defendant endeavored to induce him to sign false statements of its assets and liabilities, which were to be submitted to creditors for the purpose of obtaining credit and extensions of time on debts owing by it, and failing to induce him to sign such false statements they were caused to be signed by other officers of the company; and that it was arranged between him and defendant that he would pay the expenses of the work under his control by drafts drawn on defendant and which it agreed to honor promptly, but failed and refused to do.

After its demurrer to the amended petition was overruled, defendant filed an answer denying the material allegations of the petition and amended petition.

On the trial before a jury Posey testified as to the execution of the written contract and its subsequent parol modification, and stated that he stopped work altogether on August 11, 1923. On May 29, 1923, he tendered his resignation to defendant, but his resignation was not

accepted. He tried to secure other employment, but was unable to do so until November 1st. On May 15, he met R. F. Hill, Jr., at Ashland. He was dissatisfied with the Newport News job and stated that on account of the Boyd county work starting up, and the quarry work, he was going to take the Newport News job away from plaintiff and let him have the Boyd county work and the quarry work. He inquired of Mr. Hill if he was going to let him have his profits on the Newport News job and he said that he would not, and that led him to become more dissatisfied than ever. After sending in his resignation, Hill got Mr. Harrison to come to Ashland on July 4th. Plaintiff was then notified that he would have no further connection with R. G. Hill & Company. On being asked to state what led him to offer his resignation on May 29, plaintiff said that the bills on the Newport News job were not being paid and that he himself was hampered by not having funds to pay labor and freight bills. Three of his drafts on the Boyd county work were returned unpaid and this left an overdraft at the Second National Bank. When he resigned on May 29, there was an overdraft of $6,500.00 at the bank. He ceased to have anything to do with the Newport News job about May 15. His salary was paid up to August 11th. On cross-examination he stated that along about the 10th or 15th of May, Mr. Hill acquired his interest in the Ashland Limestone Company and contracted to pay him on a royalty basis in the amount of $28,500.00. At that time he had a one-third interest in the limestone company. He continued to superintend the R. G. Hill & Company operations in Boyd county during the month of June. The last trip he made to Newport News was May 28th. After July 5th he did no further work. On his redirect examination plaintiff offered to testify that a financial statement was sent to him by defendant to be presented to the Second National Bank of Ashland as a basis of credit with the request that he sign same; that this statement included in the list of assets of R. G. Hill & Company various items of property and equipment which he knew were not the property of R. G. Hill & Company, and he thereupon declined to sign the statement or to furnish it to the bank; and that afterwards he saw the statement with the signature thereon of R. F. Hill, Jr., president of R. G. Hill & Company, in the possession of the bank. On objection

by defendant this evidence was rejected. On being asked if he was ready, able and willing to carry out his part of the contract, he said, ''I would have been willing if he had left me in charge of the Newport News work and the Boyd county work and had taken care of the merchants or bills as he should have done and had not embarrassed me by asking me to sign financial statements which I had every reason to believe were not correct with the different creditors and banks of this vicinity.'' On re-cross-examination he testified as follows:

''Q. You raised the objection on account of this statement and on account of the financial situation that you have just described, that the reason you wanted to resign and quit?

''A. No. The main reason I didn't care to go ahead with that job, the Boyd county job, I figured that there would be two or three thousand dollars profit on the Newport News job and my 10% of the profits would amount to something, when he took that away from me that deprived me of my profit on that job, and when he took the Boyd county job away in July I figured it was two or three thousand dollars profit on that, or my part of the 10%.''

At the conclusion of plaintiff's evidence, defendant asked for a peremptory instruction. Pending the consideration of the motion plaintiff offered and was permitted to file a second amended petition purporting to conform to the proof, and averring that defendant wrongfully discharged him in July, 1923. The allegations of the second amended petition were traversed of record. The motion for a peremptory was then overruled. Thereupon R. F. Hill testified that he did not discharge plaintiff, but that plaintiff voluntarily resigned without cause. He also stated that plaintiff assented to the arrangement by which he was relieved of the superintendence of the work at Newport News, and that, so far as he knew, plaintiff was never asked to sign any financial statement. The court instructed the jury as follows:

''No. 1. If the jury believe from the evidence that the plaintiff, M. E. S. Posey, was discharged by the defendant at a time when he was able, ready and willing to perform his contract with the defendant, the law is for the plaintiff and you should find for him the compensation he would have earned but for

such discharge, from the date thereof until he could, by reasonable diligence, find other employment at the rate of $150.00 per month during such time, and such further sum as a portion of the net profits of the contracts referred to as you may believe from the evidence defendant agreed to pay him on that item, not exceeding altogether the sum of $1,450.00, the amount claimed in the petition.

"No. 2. Unless you believe and find for the plaintiff under the first instruction, you will find for the defendant; and if you believe from the evidence that the plaintiff voluntarily quit the employment of defendant, you will find for the defendant."

The jury found for defendant, and plaintiff appeals.

Two grounds are relied on for reversal. (1) The exclusion of the evidence in regard to the financial statement. (2) The failure to incorporate in instruction No. 2 the words "without reasonable cause."

The position taken by appellee is that where the employee voluntarily abandons the service, whether with or without justifiable cause, the contract of employment is terminated, and he can not recover for unearned wages or future compensation. There is authority for this position. 39 C. J. 78. It seems to us, however, that the rule thus broadly announced involves a contradiction of terms. It hardly can be said that one voluntarily abandons the service if he had justifiable cause for his action. Clearly, where the employer requires the employee to do something immoral or dishonorable in connection with the performance of his duties, or restricts the employee's rights under the contract, this, in effect, is a breach of the contract of employment, and if, for such reason, the employee quits the service his action will not be regarded as a voluntary abandonment. Commonwealth v. St. German, 1 Brown (Pa.) 24; Baldwin v. Marqueze, 91 Ga. 404. In the last mentioned case it was held a breach of the contract for the defendant to withdraw the power to take orders for credit sales and restrict plaintiff to the procurement of orders for cash sales only, and that because of the breach plaintiff was justified in discontinuing his services and was entitled to recover for all the damages which he actually sustained.

The causes for which appellant resigned may be summarized as follows: (1) The failure of appellee to honor drafts for supplies and labor, (2) the request that appel-

lant sign the false financial statement, (3) the taking away of the Newport News and Boyd county jobs. Appellant himself does not place much stress on the failure to honor drafts and the request that he sign the false financial statement, but gives as his main reason the taking away of the Newport News and Boyd county jobs. But, aside from this, we are not disposed to hold that temporary financial embarrassment on the part of an employer is a sufficient ground to justify the employee in leaving the service. On the contrary, it would seem to be the duty of the employee, and, especially, one occupying the position of appellant, to remain on duty and do what he could to help relieve the situation.

Doubtless, if appellee had required or insisted that appellant sign the alleged false financial statement, appellant would have had good cause for resigning his position, but his evidence goes no further than to show that the statement was sent to him with the request that he sign it, and a mere request, not insisted upon, can not be regarded as sufficient to justify his quitting the employment, and to authorize a recovery of unearned compensation. That being true, the offered evidence was properly excluded.

It remains to determine whether the taking away of the Newport News and Boyd county jobs justified the action of appellant. The Boyd county job plays no part in the case, as it was not taken away until some time after appellant resigned. With respect to the Newport News job the facts are these: The original contract included only the Newport News job and the Boyd county job. Afterwards appellant was asked to manage the Ashland Limestone Company, in which both he and appellee were interested, and the limestone company was to pay half his salary. Afterwards, Mr. Hill, who was dissatisfied with the way the work was progressing, took away from appellant the Newport News job on the ground that he could not give it proper attention. Mr. Hill says that appellant assented to this arrangement, but this is denied by appellant. After the execution of the original contract appellant consented to the arrangement by which he was placed in charge of the limestone company. In looking after this work and the Boyd county state project No. 6, it would seem that his hands were full. Therefore, when it was proposed to relieve him of the work at New-

port News the situation was such as to require something more than mere silence or failure to assent. If dissatisfied, he should have objected so as to give appellee an opportunity to adjust the matter. Appellant does not claim that he offered any objections to the change. On the contrary, he appears to have continued in the employment and to have acquiesced in the change until he finally resigned without giving any reasons therefor. In view of these circumstances we are forced to the conclusion that none of the grounds relied on were sufficient to constitute such a breach of the contract as would justify appellant's resignation and give him the right to recover unearned compensation, and that the omission from instruction No. 2 of the words "without reasonable cause" was not prejudicial to his substantial rights. Indeed, appellant seems by his second amended petition to have pitched his case on the theory that after his resignation he was again employed and then discharged, and this issue was properly submitted to the jury.

Judgment affirmed.