WILLIAM KEATING, Respondent, v. JOHN A. HYDE, Appellant.

**St. Louis Court of Appeals, December 7, 1886.**

1. ELECTIONS.—The act of March 18, 1874, concerning elections was not repealed by section 1474, of the Revised Statutes, and though omitted from the revision of 1879, is still kept in force by section one of the schedule of the constitution of 1875.

2. —— VOID AGREEMENTS.—A promise to pay for services rendered by another as a canvasser at a primary election to secure the promisor's nomination for an office, is unlawful and void.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

Martin, Laughlin & Kern, for the appellant: The act of March 18, 1874, was omitted from the revision of 1879. Torny's Note to Rev. Stat. 51. And it was not kept specially in force by the scheme and charter, article 2, section 22, Revised Statutes, 1879, page 1581.

T. J. Cornelius, for the respondent: The act of 1874 never was repealed, and its omission from the Revised Statutes, 1879 is not a repeal by implication. Sedgwick Stat. and Const. Law, 127. *The State ex rel. v. Judge St. Louis Probate Court*, 38 Mo. 529; *Howard v. Clark*, 43 Mo. 345. "No implied promise to pay for services arises, when the contract is prohibited by law absolutely." Greenhood on Public Policy, 601; Session Acts 1874, 54, 55.

Lewis, P. J., delivered the opinion of the court.

The plaintiff sued before a justice of the peace, founding his complaint on the following order, payment whereof was refused by the drawee, on the ground that there was no money in his hands payable to the drawer:

"*I. H. Sturgeon, Collector First District of Missouri.*

"Please pay to William Keating, or order, the sum of fifty dollars, for value received, and deduct the same from my pay as deputy for the month of October, 1878, and this will be my receipt for same.

"Sept. 30, 1878.      John A. Hyde."

There was another order, for $12.50, included in the complaint, but the plaintiff dismissed as to that in the circuit court, and it cuts no figure in the case, as it now stands. An amended complaint was filed in the circuit court at the trial upon the defendant's appeal, to which amendment the defendant objected, on the ground that it introduced a new cause of action. The objection was properly overruled. The amended complaint merely

amplified and made more intelligible the cause of action intended to be shown in the original complaint, except as to the $12.50 claim, which was differently described. As this part of the demand was abandoned by the plaintiff, no prejudice resulted to the defendant. It is not intended to be intimated, however, that the change of description, under the circumstances, presented a new cause of action. The defendant filed an answer in which he averred that the claims sued on had been fully paid and discharged, and set up a counter-claim of two hundred dollars, for "moneys had and received of the defendant."

The defendant introduced testimony tending to show that, in March, 1881, the plaintiff was a candidate for the office of president of the board of assessors in the city of St. Louis, and wished to be the nominee of the Democratic party. That he then said to the defendant, "The money that I gave you on your order I will call square, and I want you to work for my nomination." "I am a candidate and want you to work for my nomination. The money I gave you on the Sturgeon order, we will call it square, and if I am elected, I will give you a good position." The defendant further testified that he did work in good faith for the plaintiff's nomination, distributing the plaintiff's cards and announcements, and getting other persons to do the same, and buying drinks for the privilege of leaving such cards and announcements in public saloons, etc. That, after the plaintiff's failure to obtain the nomination, he told the defendant that he had torn up, or that he would tear up, the Sturgeon order.

The court gave for the plaintiff the following declaration of law:

"If, by the evidence, it appears, and the court finds, that plaintiff, after the maturity of the order in controversy, and whilst holding the same, became a candidate for the political office of assessor in the city of St. Louis; that to secure said office he promised and agreed with

defendant, that if he, defendant, would work and canvass for plaintiff in obtaining the party nomination for said office, he, the plaintiff, would consider the said order paid, then such agreement was an illegal one, and any work done or money expended by defendant thereunder is not the subject of set-off or counter-claim, nor can such agreement be set up as a defence in this action.''

And refused on the defendant's application, to give the following:

''If the plaintiff, in the year 1880 or 1881, was desirous of becoming a candidate for a political office, and he employed the defendant to make public his ambition, and in pursuance of such employment the defendant did work for the plaintiff in the way of distributing his announcements, and employed others to assist him in so doing, with the knowledge and consent of the plaintiff, and paid them for such assistance, and it was agreed between the plaintiff and defendant that à part of his compensation for so doing should be a cancellation of the plaintiff's claim against him, in respect of the transaction of September 30, 1878, and in consideration of the services rendered by the defendant, and the moneys so by him expended for the plaintiff, that plaintiff agreed to deliver to defendant the order of September 30, 1878, and to cancel all obligations in respect thereof, then the plaintiff can not recover in this action on said order.''

This action of the court raises the principal matter of controversy in the present appeal.

An act of the general assembly, approved March 18, 1874, provides thus:

'' Every person who shall give any money or other valuable consideration to any person whomsoever, for the purpose of securing the services of such person as a canvasser or electioneerer, in any election held under or in pursuance of the laws of this state, or of any town or city duly incorporated under the laws of this state, and every person who shall give to another any money or

other valuable thing to be used in paying for vinous, spirituous, or fermented liquors, to be given away or treated at any election, or during the canvass preceding any such election, shall be deemed guilty of a misdemeanor." Session Acts of 1874, sect. 1, p. 54.

In the same act, by section two, it is provided that if any person shall receive any money or property, or other valuable thing whatsoever, "to be used for the purpose of influencing or controlling, or in any manner affecting any such election, or to be used for any electioneering purposes whatever," such person shall be deemed guilty of a misdemeanor. The third section provides that a candidate violating the act shall be ineligible to office, and, if elected, his conviction of the offence shall vacate his office.

This act was not included in the Revised Statutes of 1879, but was kept in force by section one, of the schedule of the state constitution, until altered or repealed by the general assembly, and was further continued in full force and effect by Revised Statutes, section 3161, unless found repugnant to the acts passed or revised at the revising session. We are not referred to any such alteration, repeal, or repugnancy, nor have we found that any exists, unless it may be discovered in Revised Statutes, section 1474, which reads thus : "If any person shall, directly or indirectly, give or procure to be given, or engage to give any money, gift, or reward, or any office, place, or employment upon any engagement, contract, or agreement, that the person to whom, or to whose use, or on whose behalf, such gift or promise shall be made, 'shall, by himself, or any other, procure, or *endeavor to procure*, the election of any person to any office, at any election by the electors, or any public body, under the constitution or laws of this state, the person so offending shall, on conviction, be adjudged guilty of bribery, and punished by imprisonment in the penitentiary for a term not exceeding five years." This law has been in force ever since the revision of 1855,

and, while we incline to the opinion that the statute first above quoted also remains in full force, yet it is not necessary so to decide for the purposes of this case. The statute last quoted is sufficient for our conclusion, since it clearly indicates the policy of the state. Argument may be offered to show that the contract or agreement between the parties in this case was not within the literal terms of the statutory prohibitions. But the question is not whether a conviction could be had, under the statute, upon the facts disclosed by this record. The only question here is, whether the agreement itself was void, as contrary to public policy? A nomination as the exclusive candidate of a great political party for any public office, is one of the most important features of the machinery which is to work out the ultimate result. Where the predominance of the particular party is conceded, such a nomination is considered equivalent to an election. To "endeavor to procure" the nomination of an individual, is at least a step in the direction of endeavoring to procure his election. It is, therefore, no less a matter of public concern that purity of suffrage shall prevail in the selection of the party candidate, than in the ultimate choice of the officers. Since the law has taken special cognizance of primary elections for delegates to nominating conventions (Session Acts, 1875, p. 54), its protest is yet more emphatic than before, if possible, against making the selection of a party's candidate a subject of bargain and sale. There is a clear distinction between the purchase of services to be devoted only to an advertising of the fact that one is, or desires to be, a candidate, and the purchase of service to be employed in advocating his peculiar merits and eligibility, so as to influence the choice of the voter. No public policy forbids the making of compensation, under agreement or otherwise, for printing or distributing announcements, or for the employment of any proper agency which may bring the fact of a person's candidacy more prominently before the public eye. The informa--

tion thus disseminated is essential to the intelligent determination of the voter's choice. But it becomes a very different thing, when money is paid or promised for efforts to control the voter's free agency in selecting the object of his suffrage. In the present case, the promise or agreement shown in the testimony and remarked upon in the instructions belongs to the last mentioned class. The defendant was to "work for" the plaintiff's nomination; not as an advertiser only, but as an advocate. We think that the circuit court committed no error in holding that the agreement was void, as against public policy.

It is assigned for error that the court refused to permit the defendant to prove how much time he occupied in canvassing for the plaintiff's nomination. The ruling was correct, not only because no claim for time appeared in the counter-claim, but also for the reasons already given against the propriety of the employment.

The judgment is affirmed, with the concurrence of all the judges.