WILSON *vs.* THE ATLANTA & CHARLOTTE RAILWAY CO.

1. Delivery of goods to a common carrier for transportation, whether actual or constructive, being a bailment, involves exclusive possession in the carrier, and this involves a surrender of custody and control for the time being by the consignor.

2. When the charge of the court affirms as a fact that there was no contention of the kind stated, this means that there was no such contention at the trial, and the statement will be taken in the Supreme Court as true, unless the contrary be certified in the bill of exceptions, or elsewhere in the record.

3. When the measure of damages given by the court to the jury is more favorable to the plaintiff than the one prescribed by law, the plaintiff has no cause to be dissatisfied therewith.

4. Requests for instructions to the jury which are inaccurate, inapplicable or immaterial, should be declined.

July 31, 1889.

Common carriers. Railroads. Delivery. Bailments. Charge of court. Practice. Damages. New trial. Before Judge VAN EPPS. City court of Atlanta. June term, 1888.

Reported in the decision.

FRANK A. ARNOLD, for plaintiff.

JOHN L. HOPKINS, for defendant.

BLECKLEY, Chief Justice.

In the fall of 1880, certain persons had about 1,200 cords of wood piled along the line of this railway company, between the eighth and eleventh mile posts from Atlanta. The plaintiff, Wilson, desiring to purchase the same if he could have it transported by the company to Atlanta, consulted with the master of trains, and ascertained from him that the company contemplated clearing the road in a short time of all the wood along the line; that a train would be put on for that purpose, etc. Wilson, acting upon this information and assurance, made the purchase. At that time it was the custom of the company to supply cars upon application, when it could do so, and for the owners of wood to employ hands and load the same. Sometimes, upon special request, the company would employ the hands and charge extra on that account, but it was not the custom to do this without special request. As to about 300 cords of the wood purchased by the plaintiff, there is no complaint of delay in the transportation. About 200 cords have never been carried to Atlanta at all; the residue, after long delay, was carried and delivered during the year 1881 and the spring of 1882. The present action was brought for damages resulting from this delay, and from the loss of 158 cords not carried and delivered at all.

The declaration alleges, in substance, that relying upon the custom of the defendant, and the assurance of its officer, the plaintiff bought the wood and delivered it to the defendant, and offered it for shipment on the line of the road between the 8th and 10th mile posts, and the defendant undertook and promised to haul it to Atlanta promptly, and made no objection to the time,

place or manner of delivery for shipment. And as to 158 cords there was no carriage and delivery at Atlanta, but the same was wholly lost to the plaintiff, and converted by the defendant to its own use; and as to 866 cords, there was unreasonable delay in carrying and delivering; to the plaintiff's damage, etc.

The declaration alleged nothing of any application for cars, or of any offer by the plaintiff to furnish hands to load them, or of any request made of the company to furnish such hands; nor was there any allegation of refusal by the company to receive any wood offered it for transportation, or to furnish cars in which to load it for shipment. The evidence showed that frequent applications had been made for cars, and that the company failed to furnish them, giving as a reason that the company did not have them to spare. On one or more occasions, when the plaintiff suggested that he could obtain cars elsewhere, the officer answered that he did not have a locomotive to spare. The value of the wood at the point of shipment was proved, and also the value in Atlanta in the winter of 1880, in the year 1881 and in the spring of 1882. There was other evidence, but the foregoing facts, though a very meagre synopsis, will serve for an understanding of the rulings made in this opinion. Nothing was proved as to tender or payment of freight, or as to the time and place at which, according to custom, the freight was payable. The jury found for the defendant, and a motion was made for a new trial, on the general grounds, and on certain charges of the court and refusals to charge as requested.

1. The great and controlling question in the case was, as to whether the wood was delivered to the company and accepted by it for shipment. The court charged the jury, in substance, that delivery is complete when, actually or in legal effect, the possession is sur-

Wilson *vs.* The Atlanta & Charlotte Railway Co.

rendered to the carrier, and the owner abandons all control over the goods until the carriage is complete, and that not until this has been done does the responsibility of the carrier commence, either for loss or detention. Also, that if deposit along the line was made for the convenience of the owner in delivering at some future time, and if the carrier did not assume possession and custody to the exclusion of the owner, the wood was not accepted for shipment, and the carrier's responsibility would not begin until something more was done to accomplish the bailment. Also, that if plaintiff's vendors deposited the wood in this way and continued to exercise acts inconsistent with its exclusive possession and custody by the company as a common carrier, the bailment would not begin until there was a complete surrender by the plaintiff to the carrier for shipment. Under the facts in evidence, and according to the authorities, these instructions were correct. Hutchinson on Carriers, §82 to §99 inclusive ; 2 Rorer on Railroads, 1279 *et seq.*

We think it clearly appears that, under the system which both parties had in contemplation, it was expected that before delivery was consummated, the owner would either load the cars himself, or have it done by the company at his expense after special request. Delivery on board the cars, according to that system, would terminate the plaintiff's possession and be the inception of possession by the carrier. Wells *vs.* Wilmington R. R. Co., 6. Jones Law, 47. Should it be thought that *Central R. R. vs. Hines,* 19 *Ga.* 208, or *Fleming vs. Hammond, Id.* 145, militates with this view, the circumstance of difference is, that in these cases the shipper had done all that the prevailing system required of him. He neither had to supply labor for altering the situation of the goods, nor to make any

special request that the carrier would supply it at his expense. Moreover, there is a high degree of improbability that a railroad company or its patrons would ever consider that wood, which was scattered along several miles of the line of railway awaiting future transportation, was in the possession of the company as a common carrier. If in the company's possession, it would be at the company's risk, and the loss of the same by fire, theft, etc. would be chargeable to the company. Perhaps it might be reasonable, in the absence of custom to the contrary, to consider the wood as delivered in this way, if *immediate* transportation of the whole was expected ; but in this case it was unknown to any of the parties when the company would be ready to effect the transportation. No definite time was ever fixed, and according to the evidence, several trains of cars would be required to move such a quantity of wood, a train-load being about 100 cords. The plaintiff, under the evidence, might have had a cause of action against the company for not receiving the wood, or for not furnishing cars in which to load it for delivery to the company, but this action has no such scope.

2. The court charged : " There is no contention in this case that the defendant was bound by any custom to accept delivery of wood delivered along its route between stations, and forward the same in due course as in case of goods actually received and receipted for transmission to its regular depot or station." This is complained of. The court, we take it, meant that there was no such contention at the trial, and if this was true, it was the right of the court to state it to the jury. We are nowhere certified that it was not true. *Brantly vs. Huff*, 62 *Ga.* 532 (7).

Besides, correctly understood, this instruction means simply, as we conjecture, that the plaintiff relied on a

constructive rather than an actual delivery to the company; and in truth, the latter species of delivery is all of which the evidence affords any glimpse.

3. Passing over the 5th ground of the motion, which we do not understand, the next topic of the charge is as to damages, touching which, with reference to the wood wholly lost, the court indicated as the measure, the value at the place of destination, and at the time when delivery ought to have been made, less the freight; and as to the wood delayed but finally delivered, the difference between the value at the point of shipment and the point of destination after the lapse of a reasonable time for effecting the carriage, less the freight. The first measure was undoubtedly correct, and the second was incorrect only in that it was more favorable to the plaintiff than the measure prescribed by law. As at any and all times the wood was worth more at Atlanta than at the point of shipment, the difference between the two values at Atlanta would be less than the difference between the higher of these and the value at the point of shipment. It is plain that of any three values, the difference between the highest and the lowest is more than the difference between the highest and the one immediately below it. As to deducting freight, this would have been wrong if the freight had been paid, as to which there was no evidence.

4. The request to charge that if the wood was delivered to the company, the company would be estopped to deny that there was a custom to ship it, was not applicable because the whole pressure was upon the question of delivery, and if there was delivery, whether there was a custom to ship or not would be immaterial. The request to charge that the company would be bound to ship the wood in its turn, did not state the law correctly. The plaintiff would have no right

of action if the wood was shipped in a reasonable time, whether in its turn or not. The request to charge the general proposition that the railroad was a common carrier, bound to act with fairness, etc., was a barren generality and therefore not needed for the case. The request to charge that the defendant was bound to furnish sufficient rolling-stock to haul the ordinary business offered to it, would have been appropriate had the action been for refusing to receive, and not for failure to carry after receiving.

The general grounds that the verdict was contrary to law, evidence, etc., were correctly overruled with the rest, and there was no error in refusing a new trial.

Judgment affirmed.