## SOUTHERN RAILWAY COMPANY *v.* WILLIAMS.

1. Where in a suit brought to recover damages for the loss of a car-load of fruit in consequence of a decay of the same, occasioned, as alleged, by the failure of the defendant company to properly refrigerate the car according to its undertaking, it was alleged in the petition that the defendant failed to ice the car in which the fruit was transported at the point of destination, and failed to reice same and to keep the same iced so as to properly preserve the fruit, that the car in which the fruit was transported was almost entirely without ice when it was turned over to the plaintiff, and that the defendant company failed to replenish the ice at the point where the car was loaded and at other points in order to save the fruit,—a demurrer to such petition, criticising the same upon the ground that "it is not alleged when and where the car of peaches in question should have been iced or when and where the same was iced, nor what could have been a 'proper' icing to preserve said fruit, nor wherein defendant failed in the duty claimed for such icing," was without merit.

2. Where a bill of lading was made out for only 380 crates of peaches and 192 crates of apples, and the agent through error failed to include in said bill 40 crates of peaches which were put in the car with his knowledge after the first loading of the car, which last 40 crates were received by the defendant company under the terms of the original contract and were transported to the point of destination, the defendant charging and collecting freight and icing therefor, the plaintiff was entitled to recover for the full number of the crates of fruit shipped, upon proof of loss through the alleged negligence of the defendant company; and the demurrer to that portion of the petition stating the number of crates of fruit shipped, based upon the ground that the bill of lading showed a less number, was properly overruled.

3. Where an instruction by the court is sound within itself, it affords no ground of criticism upon that particular instruction that the court failed in immediate connection therewith to charge some other principle or rule of law.

4. It appearing that the plaintiff in error had adopted a rule with reference to the placing and loading of cars intended for the transportation of fruit, which provided that such cars "must be loaded and ready for movement within 24 hours from the time they are placed for loading, and these companies will not be responsible for the maintenance of a supply of ice in said cars after the 24 hours; when practicable to do so, additional ice will be furnished at loading points if desired; a charge of $5.00 per car for each additional 24 hours or fraction thereof will be made on account of loss from melting of ice," the court did not err, as against the plaintiff in error, in instructing the jury that the rule would be effective and binding upon the plaintiff only in case he knew of the same or might have known of it in the exercise of ordinary care.

5. Although the plaintiff observed the condition of the car at the time of the loading of the fruit therein, with reference to the insufficient refrigeration, still if he called the attention of the agent of the company at the shipping point to the condition of the car, and the agent of the company directed him to go ahead and load the fruit, assuring him that the railway company would furnish the ice, and the plaintiff, relying on that promise, loaded the car, and the company failed to furnish the ice and on that account the fruit was damaged, the company would be liable.

6. The court erred in the following instruction to the jury: "If you find for the plaintiff, you will find the full amount proven in the case, and you will look to the evidence and see what the amount proven is, and your verdict will be for that amount."

(a) The expression, "you will find the full amount proven in the case," might be considered by the jury as meaning the highest amount which there was evidence tending to show the plaintiff had suffered as damages.

(b) The instruction tended to exclude from the consideration of the jury the question as to what part, if any, of the deterioration of the fruit constituting the cargo was due to inherent defects in the fruit, caused by its having been kept out of the refrigerator car for one entire night after it had been picked from the trees.

JANUARY 24, 1913.

Action for damages.    Before Judge Fite.    Whitfield superior court.    October 20, 1911.

*Maddox, McCamy & Shumate* and *George G. Glenn*, for plaintiff in error.    *C. D. & F. K. McCutchen*, contra.

BECK, J.    W. L. Williams brought suit against the Southern Railway Company to recover damages for the loss of a car-load of fruit shipped by the plaintiff over the defendant company's line of railway, in consequence of the decay of the fruit, which decay it was alleged was caused by defendant's negligence in failing to properly refrigerate the car in which the fruit was transported. The defendant demurred to the petition; and in its answer thereto denied all negligence on its part, and also raised an issue of fact

as to the quantity of fruit alleged to have been shipped. There was a verdict for the plaintiff, and a motion for a new trial was filed by the defendant. In the bill of exceptions error is assigned upon the overruling of the demurrer and of the motion for a new trial.

1. It is alleged in the petition, that the defendant company agreed and undertook to transport the fruit "under proper refrigeration," and that it failed to ice said car in which it transported the fruit at the point of destination, and failed to re-ice same and to keep same iced so as to properly preserve said fruit; that the car in which the fruit was transported was almost entirely without ice when it was turned over to the plaintiff; and that the defendant company failed to replenish said ice at the point where the car was loaded and at other points in order to save the fruit. We think these allegations of failure upon the part of the defendant company to properly refrigerate the car were sufficient as against the demurrer, which criticised them upon the ground that "it is not alleged when and where the car of peaches in question should have been iced or when and where the same was iced, nor what could have been a 'proper' icing to preserve said fruit, nor wherein defendant failed in the duty claimed for such icing." The allegations of the petition were sufficient to put the defendant on notice as to the acts of negligence relied upon by the plaintiff to establish a failure upon the part of the company to comply with its undertaking to transport the fruit under proper refrigeration; and it was not necessary for the plaintiff to go further and allege more in detail where the car should have been iced, nor to set forth what would have constituted proper refrigeration of the car under the circumstances.

2. The question raised by the other ground of demurrer is disposed of in the second headnote.

3. The court charged the jury as follows: "Now, gentlemen, the burden of proof is on the plaintiff, to start with, to show that he delivered to the defendant company the apples and peaches as he has alleged, and to show that they were delivered in good condition, and that they were lost or destroyed—damaged and ruined as he contends, without any fault on his part." The charge as quoted in itself is not criticised by the plaintiff in error; and it is not a good ground of attack that the court failed in this con-

nection to charge some other and further principle of law imposing other duties upon the plaintiff.

4. In the course of his instructions to the jury the court charged as follows: "Now, gentlemen, there has been a rule introduced in evidence, and the court charges you this is a reasonable rule; and if the plaintiff Williams knew of it, or could have known of it by the exercise of ordinary care, he would be bound by it. This is the rule: 'Cars must be loaded and ready for movement within twenty-four hours from the time they are placed for loading, and these companies will not be responsible for the maintenance of a supply of ice in said cars after the twenty-four hours. When practicable to do so, additional ice will be furnished at loading points if desired. A charge of $5.00 per car for each additional twenty-four hours or fraction thereof will be made on account of loss from melting of ice." The court did not err, as against the plaintiff in error, in limiting the application of the rule referred to, when he instructed the jury that the plaintiff would be bound by it if he knew of it or could have known of it by the exercise of ordinary care; and the position of counsel for plaintiff in error is unsound wherein they contend that the jury should have been instructed that this rule "was the measure of defendant's duty, irrespective of the question of whether Williams knew the contents of the rule or by the exercise of ordinary care could have known thereof."

5. The principle stated in the 5th headnote requires no elaboration.

6. The court erred, under the facts in this case, in instructing the jury as follows: "If you find for the plaintiff, you will find the full amount proven in the case, and you will look to the evidence and see what the amount proven is, and your verdict will be for that amount. Now the court does not express any opinion as to what you should or should not do, and nothing that the court has said or may say should be so construed by the jury." No doubt by the use of the expression, "the full amount proven in the case," the court meant to instruct them to find for the plaintiff, in case their verdict was in his favor, the full amount of damages which they should believe from the evidence that the plaintiff had suffered in consequence of the negligence of the defendant company; but the charge as given is open to the construc-

tion—and in the minds of non-professional men would probably receive the construction—that it was a direction to find the highest amount which the testimony in the case would authorize them to find.  Even the trained legal mind does not always sufficiently discriminate between the meanings of the terms "testimony," "evidence," and "proof."  An assumption that the jurors in this case would make a proper distinction between the meanings of those terms would be unwarranted.  The apprehension of a mistake on the part of the jury and a confusion in their minds as to the meaning of the word "proven," used in this part of the judge's charge, is not diminished when we consider the amount awarded in the verdict.  The testimony as to the value of the fruit given by the plaintiff himself is as follows:  "I telephoned a commission man at Nashville, named Hurtsky, when the peaches got ready to ship, and asked if he would like to have some, and he said that if I had some nice peaches he would give me one dollar delivered in Nashville.  I sold the car if they opened in good condition for one dollar and twenty-five cents a crate for peaches.  He told me that he would give $1.25 a crate for another car as good as the one I had just shipped there; that they were getting scarce.  He agreed to pay from 75 cents to $1.25 a bushel for apples if they arrived there in good condition.  I figured the apples in this claim at 75 cents a bushel.  The shipment was entirely lost.  I did not get a penny out of it."  It will thus be seen that the highest claimed value of the entire shipment of fruit was $669.  This amount was sued for, "besides interest from July 28, 1910," and the plaintiff footed up his total loss in the declaration as $699, which total the jury allowed in their verdict.

The charge last referred to, besides the imperfection which we have pointed out, is open to the further criticism that it had the tendency to exclude from the consideration of the jury the question as to whether or not the deterioration of the fruit and the consequent damage to the plaintiff was the result, to some extent, of the inherent condition of the fruit at the time it was loaded. The evidence showed that the car of fruit, or a part of it, was picked from the trees the day before it was loaded; and there was evidence also to show that where fruit is handled in this way, picked one day and kept out of a refrigerator car all night, it

will begin to deteriorate at once. One witness, who testified that he had been engaged in the business of raising peaches for over ten years and that he had shipped in one year as much as 165 cars, testified further that "if a peach should be picked to-day and was left in the orchard over night and loaded into the car next day, it would begin to deteriorate at once; when a peach begins to deteriorate, nothing will stop it." Whether or not any of the deterioration shown to have occurred in the fruit was due to the fact that the fruit was picked in one day and kept in a shed over night was a question for the jury, and they should have been left, under proper instructions from the court, to consider this question and its bearing upon the amount of damages recoverable.

*Judgment reversed. All the Justices concur.*