HENRY L. EADS, Appellant, v. OTTO F. STIFEL, Respondent.

St. Louis Court of Appeals. Argued and Submitted May 10, 1920. Opinion Filed June 8, 1920.

1. **CONTRACTS: Illegal Contracts: Elections: Contract to Promote Candidacy for Office Void: Public Policy.** Under the public policy of this state and under section 4401, Revised Statutes of 1909, a contract to the effect that defendant would pay plaintiff $100 a week and his expenses if he would go out in the state and use his personal influence in procuring delegates to the national convention favorable to a certain presidential candidate and at the same time to secure influence for defendant for national committeeman, is void.

2. ———: ———: ———: **Legal and Illegal Charges Inseparably Mixed: Cannot Recover.** Where legitimate and illegitimate items of services claimed are mixed in such a way that plaintiff cannot separate them and does not undertake to do so in fixing the value of his services to defendant, plaintiff cannot recover for any of them.

Appeal from the Circuit Court of the City of St. Louis.— Hon. *Wilson A. Taylor*, Judge.

AFFIRMED.

*John B. Denvir, Jr.* for appellant.

(1) The contract sued on in this case is a valid contract and the evidence introduced by appellant conclusively established that he duly performed his part of said contract. (2) Appellant was entitled to go to the jury upon the second count of his petition and the court erred in giving a peremptory instruction for the respondent. (3) There is nothing illegal in an agreement to pay for the open advocacy for the election of a candidate for office or for legitimate political work. 13 C. J. 438, paragraph 374; Note 51, L. R. (N. S.) p. 552. (4) The policy of the law in Missouri is not against the validity of agreements such as that in the case at bar.

*Theodore Rassieur* and *John M. Goodwin* for respondent.

(a) A contract whereby another agrees to use his influence in aid of the election of a candidate to public office is void and no recovery can be had thereon. Keating v. Hyde, 23 Mo. App. 555; Note 51, L. R. (N. S.), p. 549. (b) A mere agreement to "work for on in behalf" of a candidate is invalid. Keating v. Hyde, supra. (c) Contracts purchasing or hiring the influence of another to further a particular election or candidate for office are wholly void. Wilcox v. Puryear, 12 Ky. L. Rep. 556; Gaston v. Drake, 14 Nev. 175, 33 Am. Rep. 548; Swayze v. Hull, 8 N. J. L. 54, 14 Am. Dec. 399; King v. Raleigh Co., 147 N. C. 263, 60 S. E. 1133; Nichols v. Mudgett, 32 Vt. 546; Livingston v. Page, 74 Vt. 356, 52 Atl. 965; Whitman v. Ewin, 39 S. W. (Tenn), 742; Exchange Bank v. Henderson, 139 Ga. 260, 77 S. E. 36; Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 699; Gray v. Hook, 4 N. Y. 499; Schneider v. Local Union, 116 La. Rep. 270, 5 L. R. (N. S.), 891. (2) The policy of the law in Missouri is against the validity of such agreements. Sess. Acts 1874, p. 54; Keating v. Hyde, 23 Mo. App. 555; R. S., Secs. 6038, 6057, 6058. (3) Even if any of the services sued for were lawful, i. e., such as could be contracted for, a recovery must be denied because they are blended and confused with the unlawful services. Burke v. Child, 21 Wall. 441, 22 L. Ed. 623.

REYNOLDS, P. J.—This is an action by plaintiff against defendant, the petition in two counts. In the first count it is averred that on or about February 1, 1912, a certain agreement was made and entered into by and between plaintiff and defendant to the following effect:

"Plaintiff was employed to devote his time and services to promoting the candidacy of Mr. William H. Taft for nomination as President of the United States (and

of Mr. Otto F. Stifel for National Committeeman for Missouri), in the various Congressional Districts of Missouri, and for said time and services was to receive one hundred dollars ($100) per week, and the actual expenses incurred by him in carrying out the objects of his said employment.''

Plaintiff states that he has duly performed all the conditions of the contract on his part to be performed, and rendered the services contracted to be performed as aforesaid, whereby the sum of $1400 is due him from defendant for salary for such services; that defendant has paid him the expenses incurred in pursuance of the terms of the contract and on April 24th paid him the sum of $100, and on June 16, 1912, the further sum of $50, leaving a balance due of $1250 for salary. Averring demand and failure and refusal to pay, plaintiff asks judgment for that amount.

The second count is on the same transaction but on *quantum meruit.*

The words in brackets were stricken out of both counts on motion.

A general denial was filed and the cause tried before a jury. At the close of plaintiff's evidence the court gave a peremptory instruction for defendant. Verdict and judgment went accordingly, from which latter plaintiff, filing a motion for new trial, has duly appealed.

The contract, as testified to by plaintiff, was to the effect that defendant said he would pay plaintiff $100 a week and his expenses, if he would go out and undertake the work such as he had laid out for him to do in this State; that is, use his personal influence in procuring delegates to the National Convention favorable to Mr. Taft; that plaintiff's acquaintance with every one of the districts, with the different chairmen, was just what he wanted and he wanted plaintiff to interest himself in the campaign, and plaintiff consented and told defendant he would go out and enter the work for a short time. On

cross-examination plaintiff testified that the purpose for
which Mr. Stifel employed him was to go around in
the several counties where the counties were holding
county conventions to elect delegates to the Congression-
al and State Conventions to see or use his influence to
see that Taft delegates were elected in those counties
and that ultimately the delegates sent to the convention
would be for Taft. That was the ultimate result of his
duty of going ino each of the counties and getting men
to work. Plaintiff testified that his long experience in
politics in this State had given him an acquaintance
throughout the State; that as he stated in his petition,
his expenses had been paid. Plaintiff also testified that
in connection with this work he had looked after the
interest of defendant in securing delegates who would
vote for him as National Committeeman. Plaintiff testi-
fied at great length as to his acquaintance throughout the
State, and as to his services rendered under this con-
tract; that he went into different parts of the State,
saw different men who were prominent and active in
politics and endeavored, used his acquaintance and in-
fluence, to secure delegates to the convention who were
in favor of the nomination of Mr. Taft for President
of the United States. Under cross-examination plaintiff
was asked this question: "Mr. Stifel never asked you
then for what consideration you would undertake this
work, did he?" To which he answered, "I don't think
so, for the reason I didn't want to undertake the work,
but he said he would give one hundred dollars if I would
do that." Plaintiff was then asked, "What work," to
which he answered, "Such work as he wanted me to un-
dertake to do in the campaign, to go into the different
counties, wherever he asked me to go and to work; first,
to secure delegates for Taft and at the same time to
secure influence for Mr. Stifel" for National Committee-
man. Plaintiff further testified that when he went into
a district, he would go to people whom he thought ap-
proachable and try to interest them in the candidacy of
Mr. Taft; that he would ascertain who were likely to

be delegates from the county conventions and whether they were for Taft, and if not, take such steps as he could to induce them to be for him; that was generally his line of work. Asked what part of his services in the case were rendered for contests which he had assisted in conducting before the National Committee, and what part was outside of that, he said that the services were so mingled together that he could not make a difference in charge or value of the services under the several accounts. It may be said here that the evidence showed that there were contests instituted before the National Committee and plaintiff, with another lawyer, was engaged to attend to them, for which he was paid by the National Committee; but his testimony was that included in those services was his employment by the defendant, for which he was charging.

Plaintiff produced a witness, who testified that he had some correspondence with defendant, to whom he had written about the condition of political affairs in his county, and in reply defendant wrote that he had plaintiff hired and that he (plaintiff) would be in the county if he could get there; that plaintiff would come on and help in the campaign in his county.

Beyond testimony of a lawyer as to having been employed by plaintiff to institute this action, but who had thrown up the employment, which testimony was introduced for the purpose of showing why action had been delayed, the petition, having been filed January 31, 1917, this was all the testimony in the case.

Wtihout setting out the evidence in detail it is sufficient to say that the substance of plaintiff's own testimony is, that he was hired to use his influence to secure delegates favorable to the candidate supported by defendant.

Our court, in Keating v. Hyde, 23 Mo. App. 555, held that a promise to pay for services rendered by another as a canvasser at a primary election to secure the promisor's nomination for an office, was unlawful and

void. In that case, at page 559, the court quotes section 1474, Revised Statutes 1879, which is as follows:

"If any person shall, directly or indirectly, give or procure to be given, or engage to give any money, gift or reward, or any office, place or employment upon any engagement, contract or agreement, that the person to whom or to whose use, or on whose behalf, such gift or promise shall be made, shall, by himself or any other, procure or endeavor to procure the election of any person to any office, at any election by the electors, or any public body, under the constitution or laws of this State, the person so offending shall on conviction, be adjudged guilty of bribery, and punished by imprisonment in the penitentiary for a term not exceeding five years."

This is section 3722, Revised Statutes 1889. section 2090, Revised Statutes, 1899; and section 4401, Revised Statutes 1909.

Our court said, in Keating v. Hyde, supra, that this section had been in force since the revision of 1855, and that it is sufficient for the conclusion of our court, since it clearly indicates the policy of the State. The conclusion of our court in the Keating Case was, that the agreement was void as against public policy. That decision has been cited approvingly by law writers, as see notes to Exchange National Bank of Fitzgerald v. Henderson, 139 Ga. 360, in 51 L. R. A. (N. S.) 551, and is amply supported by the decisions of courts of other States. These cases are so fully cited in the notes in 51 L. R. A. supra, and there commented upon that we do not think it necessary to reproduce them here. Among the cases sustaining this, is Trist v. Child, 21 Wall. 441, where the principle is recognized and it was there held that a contract to take charge of a claim before Congress, by personal solicitation by the agent, and others supposed to have personal influence in any way with members of Congress, to procure the passage of a bill —lobbying for its passage—was void.

Another case is that of Swayze v. Hull, 8 N. J. L. 54, in which it was held that a promissory note is void which was made in consideration that the promisee should give the promissor his interest in promoting his election to the office of sheriff, the note being payable after the election if the promissor was elected, and the court held that no recovery could be had upon it by the promisee against the promissor.

Another case is that of Wilcox v. Puryear, 12 Ky. L. Rep. where it was held that a contract by which one agrees, for money or other personal profit, to use his efforts, influence, etc., to induce a majority of the voters at an election to vote for a particular candidate or for any proposition, as for a subscription by a city or county in aid of a railroad, is against public policy, and therefore void. See also King v. Raleigh and Pamlico Sound R. R. Co., 43 N. C. 263.

These are but a few of a multitude of cases to like effect.

Our conclusion is, that under the public policy of our State, as announced in the decision of our court in Keating v. Hyde, supra, and under our statute, as here quoted, and under the great weight of authority in other States, the learned trial court was correct in directing a verdict for the defendant.

It is true that some of the items of services claimed, as for instance those rendered before the contest committee of the National Convention may be legal charges, but plaintiff himself says that they are mixed with the other account in such a way that he cannot separate them and does not undertake to do so in fixing a value for his services to defendant. That being so, plaintiff cannot recover for any of them. As said by the Supreme Court of the United States in Meguire v. Corwine, 101 U. S. 108, l. c. 112, quoting from Trist v. Child, supra, l. c. 452, and referring to the mingling of legitimate with illegitimate charges or claims:

"But where they are blended and confused with those which are forbidden, the whole is a unit and in-

divisible. That which is bad destroys that which is good, and they perish together. . . . The taint lies in the stipulation for pay. Where that exists, it effects fatally, in all its parts, the entire body of the contract. In all such cases *potior conditio defendentis.*"

While the second count is on *quantum meruit,* the services there depended on were of like character and under like contract of employment as in the first count and fall under like condemnation.

It follows that the judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur.