31081.  POWELL *et al*, receivers, *v.* JEROME.

Decided December 5, 1945.

*M. W. Eason, P. M. Anderson,* for plaintiffs in error.

*J. T. Grice,* contra.

SUTTON, P. J. (After stating the foregoing facts.) █ The petition set out a cause of action, and the court did not err in overruling the general demurrer to the petition.

█ The Code, § 18-314, provides: "It shall be the duty of the railroad companies of this State to furnish to any grower of peaches . . or other perishable products, suitable icing and refrigerator cars, or other suitable cars for the transportation of such products." It is contended by counsel for the plaintiffs in error that, regardless of whether the local agent made an agree-

ment with the plaintiff to furnish top-icing, it would not be binding on the company for the reason that it appears from the evidence that it is not customary for carriers to furnish top-icing service; and that, if there was an agreement for the carrier to furnish top-icing, it would be contrary to custom and to the rules and regulations of the Interstate Commerce Commission. In this connection, it was said in Atchison, T. & S. F. R. Co. *v.* United States, 232 U. S. 199, 215 (34 Sup. Ct. 291, 58 L. ed. 569) : "When, however, ice is actually needed and is actually used, the question arises as to whether icing is a part of preparation which can be done by the shipper, or a part of refrigeration (transportation) which, by statute, the carrier has the exclusive right to furnish. To this question no answer can be given that will apply in all cases. For in the shipment of fruit, as in that of other articles, it is impossible to lay down a rule which definitely fixes what loading includes and by whom it must be done. Nor is there any consistent practice on this subject, since from reported cases it appears that the claims of the parties are based rather on interest than on some definite principle."

In *Wilson* v. *Atlanta & Charlotte Ry. Co.,* 82 *Ga.* 386 (9 S. E. 1076), Chief Justice Bleckley said: "The great and controlling question in the case was, as to whether the wood was delivered to the company and accepted by it for shipment. The court charged the jury, in substance, that delivery is complete when, actually or in legal effect, the possession is surrendered to the carrier, and the owner abandons all control over the goods until the carriage is complete, and that not until this has been done does the responsibility of the carrier commence, either for loss or detention." In that case the court ruled that the instructions of the lower court were correct. The court further said: "We think it clearly appears that, under the system which both parties had in contemplation, it was expected that, before delivery was consummated, the owner would either load the cars himself, or have it done by the company at his expense after special request. Delivery on board the cars, according to that system, would terminate the plaintiff's possession and be the inception of possession by the carrier." See cases and principles of law therein cited.

Michie on Carriers (Vol. 1, 288, § 402), lays down this principle of law: "The liability of a railroad company as a common carrier,

for goods destroyed while in its possession depends on whether or not it has accepted them for transportation, and not whether all has been done that ought to be done to precede such acceptance, and if it takes control of goods and puts its agents to preparing them for shipment, it has accepted them." See also *Central of Georgia Ry. Co.* v. *Griner,* 33 *Ga. App.* 705 (7) (127 S. E. 878).

In the present case, the agent of the company accepted the shipment of corn and agreed to depart from the custom on the part of the shipper to furnish top-icing, and further agreed to have the carrier furnish the top-icing service. The case of *Southern Ry. Co.* v. *Williams,* 139 *Ga.* 357 (5) (77 S. E. 153), is in point and controlling here. It was there ruled: "Although the plaintiff observed the condition of the car at the time of the loading of the fruit therein, with reference to the insufficient refrigeration, still if he called the attention of the agent of the company at the shipping point to the condition of the car, and the agent of the company directed him to go ahead and load the fruit, assuring him that the railway company would furnish the ice, and the plaintiff, relying on that promise, loaded the car, and the company failed to furnish the ice and on that account the fruit was damaged, the company would be liable." "Although the duty [to exercise care and diligence in providing necessary refrigeration] has been said to be a contractual one, it is in no way dependent on an express contract imposing it, and the carrier's liability is not affected by the fact that the bill of lading is silent on the subject. In accordance with these rules, unless such duty is voluntarily assumed by the shipper, if the class of goods shipped requires refrigeration for their preservation, it is the duty of the carrier to provide a supply of ice sufficient for the purpose, and it will be liable for damages resulting from non-performance. . . Such ice must be furnished not only at the point of shipment, but at such places along its line as will reasonably insure a safe transit to the point of destination. . . Carrier accepting shipment for transportation under contract to re-ice car to full capacity at certain point assumed duty of providing a sufficient supply of ice at such point and was liable for damages for failure to re-ice car." 13 C. J. S., 106, § 61. "The law implies an undertaking on the part of the carrier to exercise the diligence that the character of

the goods requires. Nor is the carrier's liability for injuries caused by insufficient icing affected by the fact that the shipper discovered that the cars were insufficiently iced before their departure, if they had no opportunity to remedy the situation, and they believed that the goods would reach their destination without injury, or if the shipper called the attention of the carrier's agent to the fact that the cars were insufficiently iced and was assured that sufficient ice would be furnished." 10 C. J., 92, § 101.

The requisition for the car, which was in writing, called for five tons of top-icing, and the copy of the waybill stated: "This car to be top-iced with not less than five tons of ice at Savannah, Ga. Car to move under standard refrigeration to destination."

In the present case, there was an affirmative act by the authorized agent of the company directing the loading of the car by the shipper which amounted to an acceptance of the car by the defendant company. See *Seaboard Air Line R. Co.* v. *Friedman,* 128 *Ga.* 316, 318 (57 S. E. 778). The oral agreement of the company's local agent to have the car re-iced at Savannah was binding on the company. The proposition seems to be thoroughly established that an oral agreement by a duly authorized agent of the carrier to furnish cars constitutes a contract which is valid and binding on both parties. *Chattanooga Southern R. Co.* v. *Thompson,* 133 *Ga.* 127, 128 (65 S. E. 285). The plaintiff had the right to rely upon the statement of the company's agent relative to the company's reicing the car. See Chicago, R. I. & P. R. Co. *v.* Stallings, 132 Ark. 446 (201 S. W. 294); St. Louis & S. F. R. Co. *v.* Vaughan, 88 Ark. 138 (113 S. W. 1035). In the present case, the question of rates and tariffs was not involved, but the action was based on the ground that the company through its agent contracted and agreed to furnish the ice for the shipment of corn, at the shipper's expense, in order to protect the corn until it reached its destination.

The verdict was authorized by the evidence, and the court did not err in overruling the defendants' motion for a new trial.

*Judgment affirmed. Felton and Parker, JJ., concur.*