32088. BELL *v.* FITZ *et al.*

DECIDED NOVEMBER 13, 1948.

*Mitchell & Mitchell, W. M. Henderson, Walter H. Bolling,* for plaintiff in error.

*C. D. McCutchen, F. Kelly McCutchen, Hardin & McCamy,* contra.

MacINTYRE, P. J. We think the defendant's exceptions to the charge of the court and to the overruling of his motion for a new trial on those grounds are well founded.

On the reverse of the bill of lading is found the following stipulation: "(d) The carrier's liability shall be that of a warehouseman, only, for loss, damage, or delay caused by fire occurring after the arrival of the property at destination or at the port of export (if intended for export) and tender of delivery of the property to the party entitled to receive it or at the address given for the delivery has been made. Except in case of negligence of the carrier or party in possession the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is

stopped and held or stored in transit upon the request of the shipper, owner, or party entitled to make such request, whether such request was made before or after the carrier comes into possession of the property." Such stipulation is a restatement of the law which is controlling on the facts which are revealed by the record as hereinbefore set forth.

Code § 18-306 provides: "Commencement and termination of responsibility.—The responsibility of the carrier shall commence with the delivery of the goods, either to himself or his agent, or at the place where he is accustomed or agrees to receive them, and shall cease with their delivery at destination according to the direction of the person sending or according to the custom of the trade."

"In *Wilson* v. *Atlanta & Charlotte Ry. Co.*, 82 *Ga.* 386 (9 S. E. 1076), Chief Justice Bleckley said: 'The great and controlling question in the case was, as to whether the wood was delivered to the company and accepted by it for shipment. The court charged the jury, in substance, that delivery is complete when, actually or in legal effect, the possession is surrendered to the carrier, and the owner abandons all control over the goods until the carriage is complete, and that not until this has been done does the responsibility of the carrier commence, either for loss or detention.' In that case the court ruled that the instructions of the lower court were correct." *Powell* v. *Jerome*, 73 *Ga. App.* 257, 262 (36 S. E. 2d, 371).

"The relation of shipper and carrier does not begin between the owner of goods and a railway company, though the former may have delivered the goods to the latter, if after such delivery anything required either by law or the contract remains to be done by the shipper; and in such case the rights and liability of the company are those only of a warehouseman." *Dixon* v. *Central of Georgia Ry. Co.*, 110 *Ga.* 173, 174 (5) (35 S. E. 369).

"The carrier's liability for goods as a carrier begins when they are delivered to it ready for immediate transportation. In Barron v. Eldredge, 100 Mass. 458 (1 Am. R. 126), the rule is thus stated: 'The responsibility of a common carrier for goods intrusted to him commences when there has been a complete delivery for the purpose of immediate transportation. . . The delivery must be for immediate transportation, and, of course, it

can not be complete if anything remains to be done by the shipper before the goods can be sent on their way.' 'If a common carrier,' to quote Moore on Carriers, 'receives goods into his own warehouse for the accommodation of himself and his customers, so that the deposit there is a mere accessory to the carriage and for the purpose of facilitating it, his liability as a carrier will commence upon receipt of the goods, but, on the contrary, if the goods when so deposited are not ready for immediate transportation, and the carrier can not make arrangements for their carriage to the place of destination until something further is done, or some further direction is given or communication made concerning them by the owner, or consignor, the deposit must be considered to be in the meantime for his convenience and accommodation, and the receiver, until some change takes place, will be responsible only as a warehouseman.' Moore on Carriers, 130. A contract imposing upon the carrier the exclusive duty of safe-keeping may be implied by usage or a particular course of dealing between the parties. But the implication that the carrier assumes the duty of immediate transportation and so responsibility as an insurer, without knowing to what place and to whom goods are to be shipped, must be clear." Central of Georgia Ry. Co. v. Sigma Lumber Co., 170 Ala. 627 (54 So. 205, Ann. Cas. 1912 D, 965). See also 22 A. L. R. 970, 113 A. L. R. 1459, § III (c) (notes), wherein numerous cases are cited supporting the proposition that the giving of shipping directions in some form, expressly or impliedly, has always been considered essential to a completed delivery which causes the liability of the carrier as an insurer to arise.

It is a well-settled principle of law in this State that "when goods which have been received by a railroad company for transportation to a given station on its line of road, and delivery there to the consignee of the same, reach their destination and are there deposited by the company in its freight warehouse, for safe-keeping until delivered to such consignee, the general rule is that the responsibility of the company as a common carrier ceases and its liability as a warehouseman begins." *Kight* v. *Wrightsville &c. R. Co.*, 127 *Ga.* 204 (1) (56 S. E. 363) and cit. See also *Allen* v. *Southern Ry. Co.* 33 *Ga. App.* 209 (126 S. E. 722) ; *Central of Georgia Ry.* v. *Leverette,* 34 *Ga. App.* 304 (129 S. E. 292) ; McCarty v. N. Y. & Erie R. Co., 30 Pa. 247; 67 C. J. 495, § 83.

It thus appears from these quotations from various authorities that the liability of the common carrier in case of loss, for which there is no excuse unless the loss was occasioned by the act of God or the public enemies of the State (Code, § 18-102), exists only, in the absence of an express or implied contract to the contrary (which was not shown in evidence here), when the carrier is in complete possession and control of the goods for immediate shipment with nothing remaining to be done by the shipper to complete the consignment to him for the purpose of carriage, and only until the goods are delivered to their destination and notice given to the consignee. It is true that in the present case there was an initial delivery of this complete character; however, by subsequent alteration of the contract in writing, the owner withdrew his directions to the carrier as to the point of destination and instructed the carrier to hold the goods until he received further instructions as to the place to which they were to be shipped. It thus appears that there was evidence in the case to authorize a finding that at the time of the destruction of the goods the shipper had withdrawn his delivery of the goods to the carrier for the purpose of immediate shipment and that something remained to be done by him to reinvest the carrier with such complete possession and control of the goods as to cause his liability as an insurer to arise. We have been referred to no principle of law preventing a finding that, and we have found no cases holding that, the shipper can not thus withdraw immediate shipping orders from the carrier before the goods have been delivered to the original destination and substitute an order to him to hold the goods until further notice, thus relieving the carrier of his obligation as an insurer until a new destination and immediate shipping orders were again given and making of the carrier a warehouseman until such occurrence. There being evidence in the case to support this view, we think that the trial judge erred in instructing the jury to disregard this defense of the defendant and in depriving the defendant of this defense by failing to instruct the jury in regard thereto.

*Judgment reversed. Felton and Gardner, JJ., concur.*