AUSTIN & ELLIS, agents, *vs.* Cox *et al.*

1. It is not a principal cause of challenge to a juror that the plaintiff has had against the juror a suit like the one about to be tried, and involving like issues, it not appearing that the suit is still pending. At most, it is only cause of challenge to the favor.
2. That the note given for the price of a commercial fertilizer declared that "this fertilizer is sold under the inspection and analysis of Dr. A. Means, inspector at Savannah, and the Department of Agriculture at Atlanta," will not preclude the maker, when sued upon the same, from setting up a warranty of quality, express or implied, and urging a total failure of consideration in that the article was not a fertilizer, had no fertilizing properties, and was wholly worthless.
3. The verdict is supported by evidence, and is not contrary to law.

Jurors. Sales. Warranty. Estoppel. New trial. Before Judge BUCHANAN. Fayette Superior Court. November Term, 1877.

Austin & Ellis, as agents of the Cumberland Bone Company, brought complaint against Cox and Palmer on the following note:

"APRIL 3d, 1876.

"On or before the first day of November next, we promise to pay to the order of Austin & Ellis, agents for the Cumberland Bone Company, the sum of one hundred and fifty-one 80–100 dollars, in payment for Cumberland Superphosphate, received by Kelly, Bishop & Co. It is also agreed and understood that we shall have the option of paying this note in good and merchantable cotton, well ginned and packed, of the grade of middling, delivered at Brooks' station, at 15 cts. per lb., at any time before the maturity of this note, and this option shall not be in force after that date. And, in case legal measures are taken to collect the same, we promise to pay all costs and expenses, including ten per cent. interest from maturity, for value received. All rights given by the homestead and exemption laws of this state are waived. This fertilizer is sold under the in-

spection and analysis of Dr. A. Means, inspector at Savannah, and the Department of Agriculture at Atlanta.

$151.80        "W. J. his ⋈ mark. Cox,    [L. S.]
(Signed)    "H. B. PALMER.    [L. S.]"

The defendants pleaded the general issue, failure of consideration, that the fertilizer was worthless, not merchantable, etc. The plaintiffs moved to strike the plea of failure of consideration upon the ground that defendants were estopped from such defense by the terms of the written contract. The motion was overruled.

The jury found for the defendants. The plaintiffs moved for a new trial because the court refused to strike the names of certain jurors from the list, (reported in the opinion); because of the refusal to strike the plea of failure of consideration, and to give such doctrine of estoppel in charge to the jury, and because the verdict was contrary to law and evidence.

The motion was overruled and plaintiffs excepted.

MARTIN & MILLS; J. S. BOYNTON, for plaintiffs in error.

SPEER & STEWART; R. F. DORSEY, by Z. D. HARRISON, for defendants.

BLECKLEY, Judge.

1. A pending suit between the plaintiffs and a juror, involving like issues as the one about to be tried, would work disqualification; but a past suit would not. At all events, the latter would not be a principal cause of challenge; it might be cause of challenge to the favor, but no more.

From the language used both in the bill of exceptions and in the motion for new trial, we infer that it did not appear to the court below that the suits between the plaintiffs and the jurors were still pending. We quote first from the bill of exceptions: "Before proceeding to strike the jury, plaintiffs' counsel moved to strike the names of Alexander Dunn and Larkin Harrison, two jurors on the special jury

list furnished to the counsel, for cause, upon the ground that plaintiffs had like suits pending against each of said jurors before the present term of the court, in which the same issues were involved as in the case on trial." Next we quote from the motion for new trial: "Because the court refuse to allow plaintiffs' counsel to strike the names of Alexander Dunn and Larkin Harrison, whose names were on the special jury list, for cause, upon the ground that plaintiffs had like suits pending against each of said jurors before the present term of the court, in which the same issues were involved as in the above case." We can see no indication that the suits against the jurors were still in existence at the time the jurors were challenged; the "plaintiffs had like suits pending against each of said jurors *before the present term of the court,* in which the same issues *were* involved."

2. The note sued on declared that "this fertilizer is sold under the inspection and analysis of Dr. A. Means, inspector at Savannah, and the Department of Agriculture at Atlanta." It is contended that this cuts off any defense depending upon warranty of quality, express or implied, and that a total failure of consideration, in that the article was not a fertilizer, had no fertilizing properties, and was wholly worthless, cannot be set up. It is quite improbable that the parties to the note intended the language above quoted to have any such effect as this position ascribes to it. There is certainly no express stipulation that the purchaser of the fertilizer would rely solely on the inspection and analysis referred to ; and a stipulation to that effect is not a necessary implication. The language seems to be a mere affirmation of a fact, with no indication that the one fact is intended to render all other facts immaterial. Suppose it were true that the article had been inspected and analized by the aggregate scientific skill of the universe, and that, nevertheless, it was not a fertilizer, had no fertilizing property, and was wholly worthless, would the inspection and analysis make the article "merchantable, and reasonably suited to the use intended?" The inspection and analy-

sis might be a part of the means, and perhaps the chief part, of proving the very defects alleged. The note does not state what result was arrived at when the inspection and analysis took place. The meaning most probably was, simply, that the sellers of the fertilizer represented in the contract of sale that the article had undergone inspection and analysis by Dr. Means, and by the Department of Agriculture, and that it had thus been ascertained to be genuine, fit for use intended, etc.

We can see no reason for treating all questions as to its quality closed.

3. The evidence in the record is sufficient to warrant the verdict, and no conflict with the law is apparent.

Cited for plaintiff in error : 3d Black. Com., 363 ; 7 *Ga.*, 139 ; 32 *Ib.*, 581 ; 24 *Ib.*, 265 ; 40 *Ib.*, 150 ; 38 *Ib.*, 216 ; 25 *Ib.*, 494 ; 36 *Ib.*, 652 ; Benj. on Sales, 491 ; *Ib.*, 461 ; *Ib.*, 462 ; *Ib.*, 479 ; *Ib.*, 480 ; 2 East, 314 ; Chitty on Contracts, (6 ed.), 482-3 ; 6 Taunton, 446 ; *Ib.*, 484 ; Code, §2651 ; 36 *Ga.*, 190 ; 13 *Ib.*, 502 ; Chitty on Contracts, 5 ; 13 *Ga.*, 505 ; 9 *Ib.*, 54; 532 ; 54 *Ib.*, 490-1 ; Code, §3753.

Judgment affirmed.