15130. ANDERSON, CLAYTON & CO. *v.* MANGHAM.

The authority of the defendants' agent to make the contract sued upon was sufficiently alleged in the petition, as against the demurrers. The contract was not wanting in mutuality, or invalid for uncertainty, nor were the damages claimed too remote to be recovered. The court did not err in overruling the demurrer.

DECIDED APRIL 23, 1924.

Action for breach of contract; from city court of Atlanta—Judge Reid. September 22, 1923.

J. J. Mangham brought suit by attachment against Anderson, Clayton & Company, a partnership whose members were nonresidents of this State. His petition alleged:

"3. That said defendants are engaged in the cotton business, that is, they buy and sell spot cotton, maintaining agencies in various parts of the south; and, among others, they maintain an office and agency in the city of Atlanta, county of Fulton, State of Georgia.

"(a) That said agency in Atlanta was, in the summer of 1921, in charge of W. L. Williams.

"(b) That said W. L. Williams had authority and power to employ men to work for said Anderson, Clayton & Company in the territory assigned to him, which included the counties of Carroll, Douglas, and Haralson in the State of Georgia.

"(c) That one E. A. Namon was the agent in charge of the agency in Atlanta, previous to the installation of said W. L. Williams with the same powers.

"4. Plaintiff shows that he is a practical cotton man, having been engaged for a number of years in buying and selling spot cot-

ton, with the capacity to earn from eight to fifteen thousand dollars per year, which said facts were well known to defendants.

"5. That in the summer of 1921 plaintiff took up with Mr. Namon the matter of contracting with defendants for the season of 1921 and 1922, beginning September 1 and ending May 1, for the purpose of purchasing cotton in the counties of Douglas, Carroll, and Haralson in the State of Georgia, having previously done business [with] defendants as their cotton buyer; whereupon said Namon referred him to W. L. Williams, his successor, and introduced him to said Williams.

"6. Said Williams, as agent of defendants, stated to plaintiff that if plaintiff would employ a sufficient force of hands with which to handle the business, that he would contract with him for handling spot cotton in the territory above named, embracing the towns of Douglasville, Villa Rica, Temple, and Bremen on the Southern Railroad, Buchanan and Carrollton on the Central of Georgia Railroad, and Bowdon on the Bowdon Railroad, which said towns, in normal times, receive from 65,000 to 100,000 bales of cotton, and stated to plaintiff that it was the purpose of defendants to buy in said territory a minimum of 22,000 bales, [with] a maximum of practically the whole, and offered to give him $100 per month plus fifty cents per bale for all cotton purchased, requesting plaintiff to see if he could make the necessary arrangements. He also agreed to give plaintiff liberal limits that would enable him to meet all competition, stating that defendants wanted the cotton and were willing to pay the price needful to get it; also agreeing to pay the following expenses: plaintiff's expenses in going from his office in Bremen to the office of defendants in Atlanta, for all telephone and telegraph messages from plaintiff to defendant. Plaintiff was to maintain an office at Bremen, Georgia.

"(a) Plaintiff stated to Williams that he would be able to meet the requirements and would report to him in a few days; whereupon Williams told him to make the needful arrangements. Acting on this, plaintiff made a contract with the following cotton buyers to work for him in said territory and in said towns for the season of 1921-1922, to wit: Ralph Upshaw at $150 per month; Robert F. Driver at $100 per month, and Alvin Steed at $100 per month. He also employed two negro helpers, one at $15 per week

and one at $10 per week, to work during said season, and he also bought a Ford car for the convenience of his employees, at an expense of $350, and reserved an office in his building in Bremen, Ga.

"(b)   On or about the last of July or the 1st of August, 1921, plaintiff reported to said Williams what he had done,—that is, that he had reserved an office, contracted with the men above named for the season above specified, and had secured an automobile. He asked said Williams if he thought the equipment was sufficient, and Williams agreed that it was.

"7.   On September 1, with the force he had employed, he opened his office and began work for defendants.

"(a)   Cotton was exceedingly late in opening in said territory, and but little was done. However, plaintiff did the best he could, being vigilant in keeping up with all cotton coming into said towns in said territory at an expense to himself, as herein above set out.

"8.   That on September 16, 1921, defendants, in violation of their duty to him and of their contract with him, cancelled said contract and discharged plaintiff, to his injury and damage in the sum of $4,828.61, as will hereinafter be more fully detailed and particularized."

"10.   Plaintiff alleges that it was contemplated between the parties at the time said contract was made, and it was a part of said contract, that he should buy a minimum of 22,000 bales of cotton; that in said territory for said season there was produced and marketed in said towns approximately the following number of bales: Carrollton, 20,000; Bowdon, 10,000; Tallapoosa, 4,000; Villa Rica, 10,000; Temple, 5,000; Douglasville, 2,000; Buchanan, 2,000; Bremen, 3,500. He therefore alleges that there was a sufficient quantity marketed in said territory for him to have easily purchased said minimum with said equipment, he being a first-class cotton man, and the men employed by him being first-class cotton men and popular with the trade, and in failing to buy the same he was injured and damaged in the minimum sum of $11,000, besides his salary of $100 per month, making a total of $11,800, all by reason of the breach of said contract by defendants."

In paragraphs 11 and 12 the plaintiff alleges that his expense in the performance of the contract would have amounted to $4,300,

and that after the breach he lessened his damage by earning $2,-671.67 in other employment, which sums, "deducted from the commission he would have received on the cotton he could have purchased, plus his salary, would leave the sum sued for, to wit: $4,828.61."

Paragraph 13 alleges that it was "contemplated between the parties that he would make a minimum of $11,800, with a good chance of making more; that he was worth as a cotton man the sum of $7,000 individually, and he alleges that he and his force were worth $11,800, as recognized by defendants, and that defendants would have paid him said sum for himself and force had he been willing to have accepted the same, but he believed that he could buy a larger amount of cotton than the minimum fixed, thereby increasing his earnings; hence he chose to operate under a commission, rather than a straight salary basis."

Paragraphs 9 and 14, and other portions of paragraph 13, contain averments as to the expenses which the plaintiff incurred in making ready to perform the contract before its breach, and alleged that, in any view, the defendants are indebted to him in the amount of the expenses incurred. It appears that these averments are made for the purpose merely of holding the defendant liable for such expenses, in the event of an adjudication that he could not recover the commissions and salary. The petition further alleges the suing out of the attachment, service by garnishment, and the giving of a replevy bond by the defendant. Judgment was prayed for in the sum of $4,828.61, with interest.

The defendants demurred generally to the petition; and demurred to paragraph 3 on the ground that it does not set out "how or in what manner W. L. Williams was authorized to make any contract, and the allegations as to the authority of the said W. L. Williams are mere conclusions of the pleader." The demurrer was overruled and the defendants excepted.

*Albert E. Mayer,* for plaintiffs in error.

*Sidney Holderness, Watkins, Russell & Asbill,* contra.

BELL, J. (After stating the foregoing facts.) "If a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business." *Pickens* v. *Thomas,* 152 *Ga.*

648 (1), 650 (111 S. E. 27). Under the allegations of the petition that the defendants were nonresidents, engaged in buying and selling spot cotton, maintaining agencies in various parts of the South, including an office and agency in the city of Atlanta, and that the agent with whom the plaintiff dealt was in charge of this office, with territory assigned to him, including certain counties in this State, he was a general agent, presumed to have authority to represent his employer in any matter within the scope of the business of buying and selling spot cotton in the territory named. Thus, as against a general demurrer, and especially in view of the averment that the agent "had authority and power to employ men for the defendant in the territory assigned to him," the petition sufficiently disclosed that the alleged contract was made on behalf of the defendant by an authorized agent. Nor was there any merit in the special demurrer. "An averment that an agent was 'duly authorized' to act for his principal is not objectionable as being a conclusion. 16 Enc. Pl. & Pr. 900." *Kiser Co.* v. *Padrick,* 30 *Ga. App.* 642 (13) (118 S. E. 791).

It is contended further that the contract is unilateral. "The consent of the parties being essential to a contract, until each has assented to all the terms the contract is incomplete; until assented to, each party may withdraw his bid or proposition, unless a given time is agreed on in which the other party may assent." Civil Code (1910), § 4230. It is also true that "An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it be unconditional and identical with the terms of the offer." *Monk* v. *McDaniel,* 116 *Ga.* 108 (3) (42 S. E. 360). To constitute a contract, the offer must be accepted unequivocally and without variance of any sort (*Gray* v. *Lynn,* 139 *Ga.* 294, 77 S. E. 156; *Dillin-Morris Co.* v. *Gillespie,* 15 *Ga. App.* 210 (1), 82 S. E. 812); but an offer may contemplate acceptance by the doing of an act; and if the act be performed while the offer is in life, a binding contract is created, and the person making the offer must abide by its terms. *Sheffield* v. *Whitfield,* 6 *Ga. App.* 762 (2) (65 S. E. 807). "If the promisee, acting on the faith of the promise, within a reasonable time, does the thing which it was contemplated he should do, then the promisor is bound on the ground that the thing done is a sufficient and completed consideration." *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810, 812

(28 S. E. 998). Measured by these rules, the contract set out in the declaration was not unilateral, or wanting in mutuality. It is shown in paragraph 6 that the defendants, by their agent, made the plaintiff an offer which was to be accepted by the plaintiff's making "the needful arrangements" and that the plaintiff thereafter did accept the offer by doing the things specified. See *Fontaine* v. *Baxley*, 90 *Ga.* 416 (1), 425 (17 S. E. 1015).

With reference to the remaining contentions, the contract as alleged was not void for uncertainty, nor are the damages claimed too remote or speculative to be recovered, if proved as laid. Civil Code (1910), §§ 4402, 4394, 4395; *Baldwin* v. *Marqueze*, 91 *Ga.* 404 (3) (18 S. E. 309); *American Agricultural Chemical Co.* v. *Rhodes*, 139 *Ga.* 495 (1) (2) (3) (77 S. E. 582); Civil Code (1910), §§ 4216, 4222.

The court did not err in overruling either the general or the special demurrer.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*