A97A0154. CARTEROSA, LTD. v. GENERAL STAR
INDEMNITY COMPANY.
A97A0923. CARTEROSA, LTD. v. HAYNIE & BYRD
INSURANCE, INC.
(489 SE2d 83)

RUFFIN, Judge.

These related appeals arise from a single action brought by Carterosa, Ltd. ("Carterosa") against its insurer, General Star Indemnity Company ("General Star"), and its insurance agent, Haynie & Byrd Insurance, Inc. ("Haynie & Byrd"). Carterosa sued General Star and Haynie & Byrd when coverage was denied for fire damage sustained by a building owned by Carterosa. In separate orders, the trial court granted summary judgment to both defendants. Carterosa appeals, and for reasons which follow, we affirm.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

Viewed in this light, the record reveals the following facts. Carterosa owned property containing an abandoned mill, as well as several other adjacent buildings. Beginning in 1987, the property was insured with one-year renewable surplus line insurance coverage through Haynie & Byrd, which secured the coverage from a surplus lines insurance broker, B. Jones & Associates ("B. Jones"). In 1991, B. Jones obtained coverage on the property from General Star.

The record shows that each annual policy issued on the property contained an endorsement designating, by an attached diagram, the buildings covered by the policy. The endorsement attached to the 1991 General Star policy provided: "We agree with you that this policy covers only that part of the building indicated by cross-hatching in the attached diagram. All other buildings, portions of buildings or

other structures at this location are excluded under this policy." The diagram showed that a vacant building located at the northern end of the property was not insured.

In May 1991, B. Jones requested that Haynie & Byrd confirm the structures covered by General Star's policy. In response, Haynie & Byrd sent B. Jones a diagram of the property in June 1991. The diagram indicated that a vacant building designated as building "D" and located on the northern end of the property was not insured.

Two years later, in August 1993, B. Jones again sought to verify the buildings covered by the policy. Instead of corresponding solely with Haynie & Byrd, B. Jones sent a diagram directly to Charles Carter, Carterosa's sole general partner. In a memorandum accompanying the diagram, B. Jones requested as follows: "The 'cross-hatched' portion of the diagram is the portion which we were asked to insure by your agent and for that reason the diagram currently forms part of your policy. From our discussion, it seems that there may be some confusion on this. Please indicate on the diagram the portion of the building which you wish to cover." In addition to showing the insured structures, the diagram indicated no coverage for a building labeled "2 story joisted-masonry vacant mill" located on the northern end of the property in approximately the same position as building "D" on the June 1991 diagram.

A representative from B. Jones testified that Carter never responded to the inquiry. Carter contends, however, that he telephoned the B. Jones office and stated that he could not understand what was covered on the diagram. According to Carter, B. Jones similarly admitted confusion over the coverage. At that point, Carter assumed "somebody was trying to work to get it straight. [He] wasn't. It wasn't up to [him]." Carter further testified that he intended the multi-story main mill building on the northern end of the property to fall within the coverage. After reviewing the diagram sent by B. Jones, Carter knew that the property covered by the policy was wrong and had been wrong for some time. Nevertheless, he did not send B. Jones or Haynie & Byrd anything in writing to indicate the proper coverage. He simply "assumed [the endorsement diagram] was a mistake all the way through. [He] never paid much attention to it because to [him] from an insurance standpoint it was ridiculous. And [he] just figured it was one of those things they'd catch sooner or later."

On April 22, 1994, the policy came up for renewal. Two months prior to the renewal date, B. Jones wrote Haynie & Byrd and requested renewal information. At Carterosa's request, Haynie & Byrd responded that "[e]verything is the same as last year." On April 14, 1994, B. Jones faxed Haynie & Byrd a renewal offer, which specified that the "[c]overage [would be] limited to [the] diagram with

cross hatching showing covered portion of building as per the expiring policy." The offer further stated that "[i]n order to bind coverage, we must be notified in writing or by fax prior to binding date."

Haynie & Byrd did not respond in writing or by fax. Instead, Haynie & Byrd agent Terri Worthey telephoned B. Jones, verbally told the broker that Carterosa was interested in renewal, and requested a premium financing agreement. At that point, B. Jones faxed the agreement to Haynie & Byrd with a note stating that "[i]n order to bind, we will need signed agreement." Haynie & Byrd sent Carterosa the financing agreement, which was signed on April 27, 1994 and mailed back to Haynie & Byrd the next day. Haynie & Byrd received the executed agreement on May 2, 1994, but never forwarded it to B. Jones.

On April 28, 1994, the main mill building burned. General Star, through B. Jones, informed Haynie & Byrd that it would not cover the loss because the insurance policy expired, without renewal, on April 22, 1994.

Carterosa subsequently sued General Star and Haynie & Byrd, arguing that General Star improperly denied coverage and that Haynie & Byrd breached its fiduciary duty to Carterosa. Granting summary judgment to both defendants, the trial court first determined that Carterosa's claim against General Star fails because Carterosa never accepted General Star's offer to renew the insurance policy. With respect to Haynie & Byrd's motion, the trial court further determined that (1) even if Haynie & Byrd negligently failed to renew the policy, Carterosa suffered no damage because the building that burned would not have been covered, and (2) Haynie & Byrd owed Carterosa no duty to ensure coverage for the main mill building.

### Case No. A97A0154

In Case No. A97A0154, Carterosa challenges the trial court's ruling as to General Star. We find no error.

1. The record shows that Carterosa never accepted General Star's offer to renew the insurance policy prior to the fire. Accordingly, the trial court properly granted summary judgment to General Star.

"A renewal insurance policy, as the original, must be accepted by both parties before there is a completed contract. [Cits.]" *Phillips v. Southern Home Ins. Co.*, 121 Ga. App. 126, 127 (173 SE2d 123) (1970). A mere offer to renew does not create a contract unless accepted by the insured. *Assoc. Mutuals v. Pope Lumber Co.*, 200 Ga. 487, 495 (4) (37 SE2d 393) (1946). Furthermore, the offeror may specify a method through which the offer must be accepted. " 'The offer

must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act.' [Cit.]" *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). See also *Anderson, Clayton & Co. v. Mangham*, 32 Ga. App. 152, 156 (123 SE 159) (1924) ("an offer may contemplate acceptance by the doing of an act; and if the act be performed while the offer is in life, a binding contract is created, and the person making the offer must abide by its terms").

(a) In this case, General Star, through its broker B. Jones, offered to renew Carterosa's insurance coverage. Included within this offer, however, were requirements as to the method of acceptance. When initially tendered, the offer required acceptance in writing or by facsimile transmission. B. Jones then instructed that the offer could be accepted only upon its receipt of Carterosa's signed financing agreement.

We need not consider whether imposition of this subsequent condition for acceptance constituted a withdrawal or waiver of B. Jones' initial requirement that the offer be accepted by fax or in writing. In this case, the record presents no evidence that Carterosa or its agent, Haynie & Byrd, complied with *any* of the conditions. Carterosa did not accept the offer in writing or by facsimile transmission. Furthermore, neither Carterosa nor Haynie & Byrd transmitted the financing agreement to B. Jones, despite its express instructions for binding coverage. The record shows that Carterosa signed the agreement and sent it to Haynie & Byrd, where it remained until well after the fire.

Carterosa's reliance on the mailbox rule is misplaced. We have explained the mailbox rule as follows: "A person who by the United States mail sends to another an offer or proposal which requires only the latter's acceptance or confirmation to create a valid contract, and who says nothing as to how the answer of acceptance or confirmation shall be communicated, nor that it shall take effect only upon the actual receipt of the acceptance by the offerer, impliedly adopts the mails as his agency, and authorizes its use in the transmission to him of an acceptance. Where the recipient of the offer thus duly deposits his acceptance in the mail, in an envelope properly stamped and addressed to the offerer, the contract thereupon becomes complete and binding, without reference to whether or not the acceptance actually reaches the addressee. [Cits.]" *Rowntree Bros. v. Bush*, 28 Ga. App. 376 (1) (111 SE 217) (1922). See also OCGA § 13-3-3.

Pretermitting whether the mailbox rule applies when the offer is made by facsimile, rather than letter, it does not aid Carterosa. B. Jones specified that it would not bind coverage until it received the signed financing agreement. Thus, B. Jones never adopted the mail as its agency. See id. Furthermore, the signed financing agreement

was never mailed to B. Jones or General Star, the only possible offerors in this case. See id.

Neither Carterosa nor Haynie & Byrd provided General Star's broker, B. Jones, with the executed agreement. Accordingly, Carterosa did not meet this specific condition for accepting the renewal offer.

(b) Carterosa further argues that Haynie & Byrd orally accepted General Star's offer on behalf of Carterosa. Even if oral acceptance was sufficient, however, the record shows that Haynie & Byrd never verbally assented to the offer.

Haynie & Byrd's owner testified that his employee, Terri Worthey, informed B. Jones by telephone that Carterosa accepted the renewal offer. Worthey testified, however, that she did not orally accept the offer. According to Worthey, she "[v]erbally told Bruce Jones that [Carterosa was] *interested in renewal* and that's when [B. Jones] sent over the premium finance agreement and that's when [B. Jones] stated that [B. Jones] had to have that back signed before they could bind coverage." (Emphasis supplied.)

Regardless of whether Haynie & Byrd's owner thought acceptance had been orally communicated, Worthey clearly testified that she never accepted the renewal offer. Carterosa has pointed to no other evidence that it, or its agent, verbally assented to the offer. The trial court properly concluded that Carterosa never renewed the insurance coverage.

2. The record also shows that even if Carterosa had successfully renewed the policy prior to the fire, the main mill building that burned would not have been covered by the insurance, further entitling General Star to summary judgment.

In anticipation of the April 1994 policy renewal, Carterosa instructed Haynie & Byrd to obtain the same coverage contained within the previous year's policy. As a result, the coverage in the new policy was to be "limited to [the] diagram with cross hatching showing [the] covered portion of building as per the expiring policy." The diagram accompanying the April 1993 policy shows that the multistory main mill building was not to be covered by the insurance.

At his deposition, Carter testified that the only building he intended to insure was the main mill building. In August 1993, however, he reviewed the diagram from the April 1993 policy and recognized that it showed coverage for the wrong building. As Carter explained, "[i]t just never occurred to me to figure [the diagram] out. It just never occurred to me that it could be proper and correct because it never occurred to me that's what I was insuring. And I really didn't pay that much attention to it. I knew there was an error. And in my opinion it was up to the insurance people to get it straight." Asked whether he reviewed any of his insurance docu-

ments prior to the fire, Carter responded: "Possibly. I never paid much attention to that. *I just [knew] whatever they had on those papers was wrong.*" (Emphasis supplied.)

By Carter's own admission, the coverage provided in Carterosa's insurance policy was not what he intended. Regardless of whether Carterosa desired coverage for the two-story main mill building, it was not covered by the 1993 policy. Accordingly, it also would not have been covered by the 1994 renewal policy.[1]

## *Case No. A97A0923*

In Case No. A97A0923, Carterosa appeals the trial court's grant of summary judgment to Haynie & Byrd. Again, we find no error.

3. In granting Haynie & Byrd's motion for summary judgment, the trial court first found that even if Carterosa's insurance agent negligently failed to renew the insurance policy prior to the fire, Carterosa suffered no damage because the burned building would not have been covered under the policy. We agree. As found in Division 2, the trial court properly concluded that the main mill building would not have fallen within the insurance coverage.

4. The trial court further concluded that Haynie & Byrd is not liable to Carterosa for failing to include the main mill building within the proposed renewal coverage. Specifically, the trial court determined that Haynie & Byrd owed no duty to ensure coverage for the main mill building because "[t]he burden lay squarely on [Carterosa's] shoulders to read [the] policy and to ascertain whether it covered the buildings which [Carterosa] intended to cover." We find no error in the trial court's conclusion.

"The general rule is that an insured has a duty to read and examine an insurance policy to determine whether the coverage requested was procured." *Jim Anderson & Co. v. ParTraining Corp.*, 216 Ga. App. 344, 345 (2) (454 SE2d 210) (1995). Carterosa argues that this rule does not apply here because, as we found in Division 1, no insurance contract was formed following the April 1994 renewal offer. In *King v. Brasington*, 252 Ga. 109, 110 (2) (312 SE2d 111) (1984), the Supreme Court was asked to consider whether "the duty to examine and reject an incorrect policy [applies] in case of failure to procure any policy at all," but did not reach the issue. We now consider the issue under the facts of this case.

The record shows that in April 1994, Carterosa specifically

---

[1] We also note that B. Jones and General Star referred to the building covered by the renewal offer as a "warehouse," rather than a mill. As shown by an affidavit submitted by Carter, the property included not only the main mill building, but several buildings designated as "warehouses."

asked Haynie & Byrd to renew the same coverage obtained the previous year. Accordingly, Haynie & Byrd instructed B. Jones that "[e]verything is the same as last year." Thus, this case does not involve procurement of an entirely new policy that Carterosa had never seen. Compare *Moseley v. Coastal Plains Gin Co.*, 199 Ga. App. 99, 103 (4) (404 SE2d 123) (1991) ("[b]ecause the evidence was undisputed that appellee never received any insurance policies prior to the fire, there was no evidence to support appellant's requested charge regarding the duty of an insured to read his policy"). Rather, the renewed policy was to encompass the same terms and incorporate the same coverage diagram as the expiring policy. We find that under these circumstances, Carterosa had a duty to reject any inaccuracies or discrepancies in the policy to be renewed.

It is undisputed that Carterosa's sole general partner, Carter, reviewed the coverage diagram in August 1993. At that point, he recognized that the coverage was not correct and had been wrong for some time. He allegedly spoke with a B. Jones representative and stated that he did not understand what was covered. After that purported call, however, he had no further conversations with anyone at Haynie & Byrd or B. Jones regarding the proper coverage. Furthermore, he ignored B. Jones' request to submit a sketch of the buildings he wanted covered. According to Carter, he simply assumed that Haynie & Byrd would protect his interests "as best [it] could."

We find that Carterosa completely neglected its responsibility to read the insurance policy and reject any inaccuracies. Carter recognized that the policy's coverage was wrong well before the April 1994 renewal date, but failed to take *any* action to remedy the situation. Although he told B. Jones that he could not understand the diagram, at deposition he clearly testified that he knew the sketch contained mistakes and provided coverage for the wrong structure.

Carterosa attempts to avoid the duty to read doctrine by citing exceptions to the rule. We have held that an insured is relieved of its general duty to read the policy "where an agent intentionally misrepresents the existence or extent of coverage, [cit.], or where the prospective insured must rely on the expertise of the agent to identify and procure the correct amount or type of insurance. [Cit.]" *Epps v. Nicholson*, 187 Ga. App. 246, 248 (2) (370 SE2d 13) (1988). These exceptions do not apply here.

Carterosa claims that Haynie & Byrd misrepresented to Charles Carter that the "main building" was covered under the policy. To establish misrepresentation, however, Carterosa must prove that it justifiably relied on the false representation. See *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298 (1) (427 SE2d 789) (1993). In this case, Carter knew that the coverage provided by the 1993 and prior policies was wrong. As a matter of law, any reliance on Haynie

& Byrd's alleged statement that the policies covered the "main building" was not justified.

Furthermore, we find no evidence that Carterosa was forced to rely on Haynie & Byrd's "expertise" to secure insurance for the main mill building. Carterosa's failure to ensure coverage for that building did not arise from complexities inherent in the policy. On the contrary, Carterosa's general partner knew the coverage was wrong, but simply decided it was not his responsibility to remedy the confusion.

Carterosa's failure to examine and reject the 1993 policy relieves Haynie & Byrd of liability resulting from the lack of insurance coverage. See *Epps*, supra. Accordingly, we affirm the trial court's grant of summary judgment to Haynie & Byrd.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JULY 11, 1997 —

*Dickinson & Mixson, David F. Dickinson*, for appellant.
*Bovis, Kyle & Burch, John M. Bovis, William S. Allred, Michael T. Thornton*, for appellees.